# EXHIBIT A

RICHARD IVAR RYDSTROM CSBN: 147470
RichRydstrom@gmail.com
4695 MACARTHUR CT. 11TH FLR.
NEWPORT BEACH, CA 92660
https://RydstromLaw.com
https://MortgageCoalition.org
(949) 678-2218
Associated Attorney for PLAINTIFF, KARL JUSTIN KEENER

KARL JUSTIN KEENER
Mailing: 1515 SE Mill St, Apt. 3,
Roseburg, OR 97470
760-412-0313
justinkeener@gmail.com

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
3/24/2026 3:26:44 PM

Clerk of the Superior Court
By V. Navarro        ,Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO

## NORTH COUNTY COURTHOUSE – VISTA

| | |
|---|---|
| **KARL JUSTIN KEENER**, <br><br> Plaintiff <br><br> vs. <br><br> **SAXON MORTGAGE SERVICES, INC.; SPECIALIZED LOAN SERVICING, LLC and Does 1 to 100, Inclusive** <br><br> Defendants. | Case NO.: _____ 26CU016535N <br><br> **ORIGINAL COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND PUBLIC POLICY COMPLIANCE:** |

1. **Violations of CC 2924.13** et al (AB 130, CC 2924.13 et al., Eff. 7/1/25; ('Unlawful Practices'; Retroactive Conduct of Prior and Current Servicer Per AB 130; HAMP 2MP, NMS, etc.)
2. **Fraud & Deceit:** Promises Made Without Intent to Perform; Misrepresentation; Concealment; Fraudulent Inducement; Common Plan & Scheme (CC §§ 1572, 1709-1713))
3. **Unfair Business Practices** (Malicious Debt Trap) (B&P §§ 17,200, 17,500, 17082, et. Seq.; CCP §1021.5 (Public Interest)
4. **Breach of Written Contract** (TPP, FIRST MOD, DOT, PROMISSORY NOTE)
5. **Promissory Estoppel**
6. **Negligence (Per Se)**
7. **Slander, Disparagement & Impairment** of Vendibility (Void/Cancelled Lien)
8. **Violations of The Rosenthal Act** (Civil Code § 1788 et seq, CCRAA CC § 1785.1 et seq., 1785.31 seq.)
9. **Negligent Infliction of Emotional Distress**
10. **Specific Performance** (Mandate Compliance: Cancellation/2MP)

1
ORIGINAL COMPLAINT

11. **Verified Quiet Title [Code Civ. Proc. §§760.010-764.080]; Declaratory Judgment [CCP §1060];** [Ca Civil § 1688 et seq; § 1689(b)(6) Public Interest; § 1689(b)(7);

[**Exhibits Attached**]
CMC; Demand for Jury Trial _____
Date Complaint File: _____

COMES NOW Plaintiff, **KARL JUSTIN KEENER**, **("Plaintiff")** who alleges as follows:

### NATURE OF THE ACTION, SALIENT ALLEGATIONS, RULES & MANDATES

1.      Home Purchase: Plaintiff purchased his home as a personal residence on or about 3/27/06 (Instrument No. 2006-0207179), with common address: 380 Lado De Loma Drive, Vista, CA 92083 [APN: 179-093-24]. ("Home", "Subject Property") Plaintiff obtained a First and Second Mortgage against the Subject Home. Plaintiff remains current on his First Mortgage ("First Mortgage", "First"). Plaintiff believes that the Second Mortgage was fully resolved in the granted First Hamp Modification ("First Hamp Mod") by Provident Funding signed by Plaintiff on or about 12/22/2011. The Second was cancelled, extinguished, forgiven, written off, charged off which was confirmed by Saxon Mortgage Services, Inc. ("Saxon", "2MP Servicer") on or about 3/26/12. Plaintiff also received a 1099-C (Notice of Cancellation of Debt) of the Second. (CC 2924.13 (b)(4), etc.)

2.      Malicious Debt Trap of Second Mortgage Debt/Lien: On or about 12/22/2011, Provident Funding granted Plaintiff a First HAMP Mortgage Modification (FIRST MOD) which triggered the duty of Saxon, the 2MP Servicer, to disclose and evaluate the Second Mortgage for the promised complete (First and Second) resolution. HAMP 2MP also contains the 'expectations' of the parties. Violations of HAMP 2MP (NMS), promises, expectations support California causes of action. (West v. JP Morgan Chase) Plaintiff was entitled to certain consumer rights and benefits mandated to reduce or extinguish the Second mortgage debt, release of the lien, and relinquishment of all rights against the borrower. (CC 2941) (Supplemental Directive HAMP 2MP/NMS (S.D. 09-05 Revised; US Treasury)

3.      Consumer Rights and Benefits Concealed: On or about March 2026, Plaintiff discovered that Saxon concealed his consumer rights and benefits of HAMP 2MP pursuant to S.D. 09-05 Revised ("2MP") and the National Mortgage Settlement ("NMS"). Plaintiff made numerous requests in March 2026 for all documents concerning this First and Second mortgages from Saxon (and Mogan Stanley) to no avail. Plaintiff seeks redress from the concealment of his 2MP rights and benefits.  Named Defendants failed to disclose, grant or deny his 2MP/NMS rights and benefits. Named Defendants acted

2
ORIGINAL COMPLAINT

in a common plan, scheme and by design to defraud Plaintiff out of his consumer 2MP/NMS rights and benefits.

4.    1099-C (Notice of Cancellation of Debt) of the Second: Named Defendants (Saxon) represented to Plaintiff on the phone and in writing that the Second was cancelled and extinguished. Some 15 years ago, on or about 3/26/12 (charge off 3/25/2011), Saxon (Servicer) represented to Plaintiff on the phone that the Second was resolved, written off and charged off and cancelled on or about 3/25/11.  In fact, in 2011, Plaintiff received a **1099-C (Notice of Cancellation of Debt) of the Second**. (**Exhibit 1 – Notice of Cancellation; "Unlawful Practice" Violation per CC 2924.13(b)(4)**) Plaintiff was led to believe and justifiably relied upon such representations for over 15 years.  On information and belief, Named Defendants failed to release the lien and relinquish all rights against the borrower Plaintiff. The IRS defines the cancellation of debt on the IRS 1099-C Form renders the debt unenforceable as an election and waiver of creditor's right to personal liability and foreclosure:

"2. A cancellation or extinguishment making the debt underceable in a receivership, foreclosure, or similar federal or state court proceeding." [2011 Department of the Treasury Internal Revenue Service Instructions for Forms 1099-A and 1099-C; IRS Page 3, 4]

5.    New "Unlawful Practice" Law:  On or about 7/1/25, a new California law grants Plaintiff further rights and benefits to seek redress for the wrongs of his prior 2MP Servicer (Saxon), as well as from his current servicer, Specialized Loan Servicing, LLC ("SLS", "Current Servicer"). SLS continues its failure to disclose Plaintiffs consumer rights and benefits not only of his 2MP rights and benefits concealed from him, but of his rights under the new law CC 2924.13 et seq. including the continuing "Unlawful Practices" by in part by failure to send all required statements, communications and servicer and ownership (Note) transfers, and by its failure to review the Second loan status with competent evidence prior to making payment demands and or threats of foreclosure to discover the voidness of the Second, and to affirmatively Release the Lien, and Relinquish all rights against the borrower on the Second. (2MP SD 09-05 Revised) Additionally, Civil Code § 2924.13(b)(4), (c), (d), (e), and (f) (added by AB 130) is the specific California law that gives borrowers leverage to bar or challenge foreclosure on a junior residential lien after a creditor sends a 1099-C or similar discharge notice (as an "Unlawful Practice"). CC § 2924.13(b) – Unlawful Practices (the core provision supporting your claim). Prior and Current Servicer violated its duties under HAMP 2MP, NMS and CC 2924.13 (b)(1-6). The statute lists six specific "unlawful practices" in connection with subordinate mortgages which are violated. CC 2924.13 (b)(4) constitutes an "unlawful practice' when: "The mortgage servicer conducted or threatened to conduct a foreclosure sale after providing a form to the borrower indicating that the debt had been

written off or discharged, including, but not limited to, an Internal Revenue Service Form 1099." (Emp. Added) (Note: This is widely understood to cover IRS Form 1099-C.) Other related violations of 'unlawful practices' at bar include debt dormancy (no contact for 3+ years), missing servicing/ownership transfer notices, expired statute of limitations, and missing periodic statements. Plaintiff learned that the new (California AB 130 (Eff. 7/1/25) expressly prohibits conduct as an 'unlawful practices' for threatening foreclosure if the Prior or Current Servicer sent an IRS 1099-C (Notice of Cancellation). Plaintiff is informed and believes that Named Defendants were acting in a common plan, scheme and design to defraud Plaintiff out of the cancelled or extinguished Second, his CC 2924.13 protections, and the consumer rights and benefits of HAMP 2MP ("2MP"), and National Mortgage Settlement ("NMS").

6.    On or about 2/20/12, Saxon (Servicer) transferred servicing to Specialized Loan Servicing, LLC. ("SLS") Saxon was the 2MP Prior Servicer during the evaluation period (12/22/2011) resulting in the grant of Plaintiff's Provident First Hamp Mod. On information and belief, Saxon failed to administer the full 2MP/NMS protocol, disclosures and notices. SLS continued the common plan and scheme in part by concealing Plaintiff's rights and benefits under 2MP/NMS, and by failing to competently review all reliable evidence of the status of the Subject Second based upon all information including the cancellation and extinguishment of the Subject Second under the HAMP 2MP and NMS rules and mandates.

7.    No transfer notice was sent to Plaintiff for the transfer to or from Morgan Stanley Cap Holding/Saxon/Ocwen/PHH/Onity.

8.    Plaintiff discovered on or about 3/16/26, that Saxon could not confirm the release of the lien and relinquishment of all rights against Plaintiff and the production of all file documents, in response to Plaintiff's request that Named Defendants (Saxon and Morgan Stanley) send Plaintiff confirmation and all such documents. On 3/23/2026 Saxon admitted by email that it couldn't confirm payoff of the Second, and confirmed all files and documents were sent to SLS. This newly discovered fact is presumptive admission that Saxon and or SLS failed to competently administer HAMP 2MP/NMS and its promises, and it is outcome determinative evidence that SLS had all Plaintiff's loan files and documents but failed to evaluate the status of the Second with all the competent and reliable evidence as mandated by law:

> From: Saxon.Lienrelease@morganstanley.com
> Date: Mon, Mar 23, 2026 at 10:39 AM
> Subject: RE: Request for Documentation of Second Mortgage
> To: <justinkeener@gmail.com>, Saxon.Lienrelease@morganstanley.com

The loan didn't pay in full under Saxon ie. it transferred and therefore we have no proof of payoff. But yes, **Saxon would've transferred all documents to SLS.** Thank you, Summer Jenkins Morgan Stanley | ISG Product Operations   (Emp.Added)

9.    Unknown to Plaintiff at this time, and on information and belief, it is alleged that: Saxon was a subsidiary of Morgan Stanley after the acquisition of Saxon Capital, Inc. In 2012, its assets (including servicing rights) were sold to Ocwen Financial Corporation (now part of Onity Group), after which the Saxon Mortgage Services, Inc. entity ceased active mortgage servicing operations under that name. On or about 2011–2012, Morgan Stanley (its then-parent) sold substantially all of Saxon's mortgage servicing rights, assets, and related operations to Ocwen Financial Corporation (now known as Onity Group Inc.). The deal closed in early 2012, after which Ocwen/Onity integrated the Saxon portfolio into its own servicing platform.

10.    <u>CC 2924.13 NOD-CERT</u>: Named Defendants have not file a Notice of Default (NOD) Certification (NOD-CERT) form.  Such certification requires admission that it **<u>engaged in an unlawful practice described in subdivision (b)</u>** for failure to send some <u>15 years</u> of required account statements, lack of communications, or if it **<u>misrepresented its compliance history</u>** by concealment and non-disclosure of all of its rights and benefits under all programs including HAMP 2MP/NMS consumer rights and benefits.

11.    <u>Continuing Fraudulent Concealment of Dual Capacity Servicer</u>:  Plaintiff's Servicer acted in a Dual Capacity as the Mortgage Servicer and in the Loss Mitigation function acting beyond its servicer role. The FTC warned servicers that the Court may find liability for such dual capacity.  Such servicers are burdened with a Conflicting Dual Capacity, further compounding its bad acts of concealing 2MP/NMS rights and benefits, and loss mitigation options, constituting Willful Suppression of Evidence (CACI No. 204), by party defendants with a *special trust dual capacity duty* (FTC) to act honestly and competently, and without committing fraud, concealment, misrepresentation, etc. Plaintiff alleges that the Servicer created confusion by concealing, omitting and causing its failure to fully disclose the 2MP/NMS rights and benefits of the US Treasury, and Plaintiffs right to verification of the debt.  Named Defendants failed to send Plaintiff's a Verification of Debt, with promissory note, deed of trust, and disclosure of the HAMP 2MP/NMS rights and benefits. It violated its verification duty under Civ. Code § 2924.17(a)-(b), and 2MP/NMS in part as follows:

    a.   a mortgage **servicer shall ensure that it has reviewed competent and reliable evidence** to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

12.    <u>Lack of Assignment of Deed of Trust & Promissory Note (ADOT) and SOT Reveal Lack of Valid Note Assignment</u>: On information and belief, there is no assignment of deed of trust for the

Second mortgage debt (and NOTE) in the real estate records (OC Title search). In California the deed of trust follows the Note. There must be a recorded valid Note assignment; the record is void of such authority. (CC 2924 et seq; 2937 et seq, 2932.5, 2924.13 (b)(1), (b)(2), (b)(3), (b)(4), etc.)

13.     BK Discharge of Second: On or about 2/8/2011 Plaintiff obtained a Bankruptcy Discharge of the Second mortgage debt.

14.     FIRST HAMP MOD: On or about 12/22/2011, Provident Funding granted Plaintiff a First HAMP Mortgage Modification (FIRST MOD) which triggered the duty to evaluate the Second Mortgage Lien for the promised complete (First and Second) resolution. HAMP 2MP also contains the 'expectations' of the parties. (West v PJ Morgan Chase)   Plaintiff believed that all matters on his First Debt and Second Debt were resolved. Plaintiff has paid his First Debt faithfully for some 15 years.

15.     2MP/NMS Consumer Rights and Benefits: Named Defendants concealed from Plaintiff the HAMP 2MP and NMS rights and benefits that would have created a complete and affordable solution, and or extinguished the Second in part or total as mandated.

16.     Representations and Expectations: Plaintiff(s) did comply with all servicer/lender requests and did all required of them. Plaintiff believed that the complete solution including the first and second mortgage/lien as required by HAMP and HAMP 2MP, the National Mortgage Settlement ("NMS") and all federal and California laws. The representations made to Plaintiff by Named Defendants and the expectations of the parties also are contained within and consistent with HAMP 2MP/NMS, etc. (e.g., *West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780*), mandating in pertinent part that the Second Mortgage/Lien ("SECOND") would be either:

   a. (1) Modified in Proportion to the First Mortgage/Lien ("FIRST", "HAMP MOD") with reduction of the interest rate, increase in payment term, and deferred and forgiven unpaid principal balance ("UPB"); or
   b. (2) Canceled and Extinguished in part of total; with Release of the Lien of the SECOND in the real estate recording systems and expressly confirming Relinquishment of all rights against the borrower (e.g. Plaintiff) to the extent of forgiven amounts. HAMP 2MP Supplemental Directive 09-05 Revised, NMS, California Law)

17.     Mandatory HAMP 2MP: Plaintiff is in direct privity, which express and implied terms require compliance with law including HAMP 2MP by Servicer:

   CA(4) (4) (4) This argument ignores Chase Bank's obligations under HAMP and the express and implied obligations under the Trial Plan Agreement. When Chase Bank received public tax dollars under the Troubled Asset Relief Program,3 it agreed to offer TPP's and loan modifications under HAMP [*797] **according to guidelines, procedures, instructions, and directives issued by the Department of the Treasury**. (Wigod, supra, 673 F.3d at p. 556.) (Emphasis Added) In West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780 (2013), the court held that HAMP guidelines

**"informed the reasonable expectations of the parties"** making HAMP an enforceable part of the contract (214 Cal. App. 4th at p. 798, from page 17.; requiring servicers to offer a "good-faith permanent modification consistent with HAMP guidelines" (id. at p. 796, from page 16. (Emp. Added)

18. <u>Failure to Disclose 2MP Rights</u>: Named Defendants failed to disclose HAMP 2MP/NMS consumer rights and benefits to consumer borrowers (Plaintiff); failed to evaluate Plaintiff for HAMP 2MP/NMS; failed to send a 2MP Evaluation Notice,  Missing Document Notice, or the mandated Grant, Denial and Appeal Letters (with codified reasons) all in violation of mandated HAMP 2MP, NMS, CC 2924.13, California law and customs and practice ("Rules & Mandates").

19. <u>Continued Inaccurate Amounts in Demand</u>: Named Defendants continue to make inaccurate, unlawful, and or excessive demands (for payment) on the Second Debt. 2MP mandated a lower amount of UPB, lower interest rate, and longer term resulting in lower monthly payment, and or extinguishment of the Second.

20. <u>Concealment Conflict of Interest Dual Capacity Loss Mitigation/Foreclosure (FTC, etc.)</u>:  Named Defendants burdened by conflict of interest by acting in a dual capacity to collect the debt and foreclosure on the debt as well as to offer Plaintiff full disclosure of his rights and benefits under the Rules & Mandates (2MP, NMS, etc.) from the effective date of 12/22/2011 (the FIRST MOD) for mandated period thereafter, to offer Plaintiff the 2MP/NMS protocol benefits. Servicers failed to do so. The FTC advisory opinion of March 2008 also warned that a California court has the power to find liability for dual capacity servicers/lenders, acting as servicer and loss mitigation settlement as alleged under California law of Rosenthal/CCRA, in part as follows:

> [California Law: Rosenthal/CCRA] Section 807 of the FDCPA establishes a general prohibition against the use of any **"false, deceptive or misleading representation or means in connection with the collection of any debt" and provides a list of 16 specific practices that are per se false, deceptive or misleading under the Act.** In enacting Section 807, Congress noted that this general prohibition on deceptive collection practices would **"enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."**

21. <u>The HAMP MOD Triggered 2MP Protocol</u>: Plaintiff's 2011 HAMP first-lien Modification triggered servicer 2MP duties (MHA Handbook v4.2, Chapter V, § 2, p. 173 as follows:

> a. **"When a borrower's first lien is modified under HAMP, the 2MP servicer must offer to modify or extinguish the corresponding second lien according to th[e steps outlined]")**. The Handbook further specifies that servicers must independently determine modification terms and evaluate eligibility (id. at p. 173: "The 2MP modification offer extends the same 14-day response deadline... and the servicer's obligation to suspend the modification process if requested by the borrower to reconsider a denial of the first lien modification"; see also p. 175: "if the borrower's first lien is modified under HAMP, the

2MP servicer must dismiss any outstanding foreclosure action on the borrower's second lien"). (Emphasis Added)

22.	Mandated 2MP Disclosure, Evaluation, Protocol:  Named Defendants servicers had a duty to offer HAMP 2PM solution first or simultaneously:

a. "If the 2MP servicer is **evaluating** a borrower for 2MP and for its own second lien proprietary modification program, **the 2MP servicer must offer 2MP first (or at least simultaneously) with the second lien proprietary modification,** regardless of the terms of the second lien proprietary modification."  (HAMP (Making Home Affordable Program Handbook for Servicers version 4.2, Chapter V, Section 4 (pages 174-175) (Emp.Added)

Further consistent and aligning policy is found in 12 C.F.R. 1024.41 (requiring Evaluation and Loss Mitigation efforts but avoiding Dual Tracking during foreclosure activity), Reg X (RESPA) 12 C.F.R. 1024.33 and CC 2937 aligning policy on Transfers requiring notice to borrower of servicing transfers by both the transferor and transferee, CFPB, Consumer Financial Protection Bureau 12 CRF Part 1006 Fair Debt Collection Practices Act (Regulation F) against collection of loan-dormant second mortgages with the common practice of discharge or forgiveness, consistent with forgiveness in part of total (HAMP 2MP 09-05 Revised; MHA HH v4.2).  These are all consistent with new instructive and enforceable California policy found in AB 130 (Cal. Civ. Code §2924.13 et seq.), as the facts of this case reveal an ongoing common plan and design or concealment of HAMP 2MP and NMS benefits (as sub-servicer for "servicing" "collections" and "loss mitigation"), and upon the grant of the HAMP FIRST MOD triggering 2MP/NMS protocols.

23.	2MP Disclosure is Mandated: "Together HAMP and 2MP create a comprehensive solution to help borrowers achieve greater affordability by lowering payments on both first lien and second lien mortgage loans . . .." HAMP Supplemental Directive 09-05 Revised.  Similarly, *Jolley* emphasized that lenders have **"an ongoing duty to communicate with and assist the borrower in the loan modification process"** (213 Cal. App. 4th at p. 900). The court found a duty of care where policy considerations (e.g., HAMP 2MP public policy) affect assessments (id. at p. 899: "… it 'sets forth policy considerations that should affect the assessment whether a duty of care was owed'"):

HN20: 2. **"'[A]n "unfair" business practice occurs when that practice "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."** [Citation.]' [Citation.]" (Smith v. State Farm Mutual Automobile Ins. Co. (2001) 93 Cal.App.4th 700, 719 [113 Cal. Rptr. 2d 399].) 3. An unfair business practice means " 'the public policy which is a predicate to the action must be "tethered" to specific constitutional, statutory or regulatory provisions.' " (Scripps Clinic v. Superior Court (2003) 108 Cal.App.4th 917, 940 [134 Cal. Rptr. 2d 101].) West v. JPMorgan Chase Bank, N.A., 214 Cal. App. 4th 780 (2013) (p4) (Emphasis Added) The public policy is HAMP 2MP, NMS, etc.

8
ORIGINAL COMPLAINT

24.     Sub-Servicers and Debt Buyers Are Burdened with Prior HAMP 2MP Duties: Servicers have a duty (continuing) to timely disclose all default option programs including 2MP/NMS and equivalents. It also had a duty to refrain from concealment of same. It also has a duty to act honestly and competently in his servicing and loss mitigation functions with Plaintiff; [Fraudulent and Negligent Default Solution Processing C.C.C. §§ 1714, 3333]; including refraining from circumventing or concealing all such program options from Plaintiff; especially at the time the FIRST MOD triggered its duty to evaluate Plaintiff for all such programs and send all related notices. Servicers did not comply with such duties, violated these duties, and acted in a common plan, scheme and design to defraud Plaintiff out of such rights and benefits. Such conduct was deceptive, likely to deceive, and malicious.

25.     Servicer Participation Agreement, or SPA: When a HAMP servicer transfers a HAMP 2MP loan, the transferee must accept (and sign the SPA exhibit agreement form) which burdens and holds both the transferor and transferee responsible to comply with HAMP 2MP/NMS, etc. Saxon, SLS, were signatory servicers (participant under a Servicer Participation Agreement, or SPA) for the Home Affordable Modification Program (HAMP) or its Second Lien Modification Program (2MP) component through the U.S. Department of the Treasury during the Great Recession era (roughly 2008–2016). Named Defendants cannot transfer the subject second to a non-SPA straw debt collector for collection some 15 years later and avoid the 2MP burdens. Such 2MP and NMS burdens are mandatory as consumer law, public policy and TARP servicer contractual mandates, affording protocol rights and benefits to the borrower (Plaintiff). A mortgage servicer must send 'notices of transfer of loan servicing…not less than 15 days before the effective date of the transfer' of the servicing of the mortgage loan. (NMS, HAMP/2MP, 12 CFR 1024.33(b)) Pursuant to CC 2937 and new Section 2929.5 ("borrower")) "any person assuming from another responsibility for servicing the instrument evidencing indebtedness, **shall give written notice to the borrower…"** Named Defendants failed to send such required HAMP 2MP/NMS notices of transfer. The U.S. Treasury Supplemental Directive 09-05 Revised SD (SD 09-05) mandates that:

> When a borrower's first lien is modified under HAMP, a participating second lien servicer must offer to modify the borrower's second lien according to a defined protocol"). "1 Introduction This Chapter provides guidance on the Second Lien Modification Program (2MP), which is designed to work in tandem with HAMP. Together, HAMP and 2MP create a comprehensive solution to help borrowers achieve greater affordability by lowering payments on both first lien and second lien mortgage loans. Under 2MP, when a borrower's first lien is modified under either HAMP Tier 1 or HAMP Tier 2 and the servicer of the corresponding second lien is a 2MP participant, that servicer must offer to modify the borrower's second lien according to a defined protocol, to accept a lump sum payment from Treasury in exchange for full extinguishment of the second lien, or to accept a lump sum payment from Treasury in exchange for a partial extinguishment and modify

the remaining borrower's second lien according to a defined protocol." (MHA Handbook v4.2 173; consistent pursuant to SD 16-02/18-01) (Emphasis added)

26.    Circumvention of SPA and Non-SPA Obligations Including NMS, HAMP 2MP: Successor servicers are obligated to honor and expressly assume the predecessors' promises and the additional responsibilities, including obligations, standards, and requirements contained in the NMS, MHA HAMP 2MP. (MHA HAMP Handbook v3.4, Sec. 1.4 Transfers of Servicing, p.20) Plaintiffs (as borrowers) must be *named as third-party beneficiaries* of contracts between the Named Defendants. (A,B,C - NMS; M1 b d p A-32) An alternative proprietary process cannot be used to have *"…the effect to circumventing, Servicers obligations under this Agreement."* (SPA, Para. 8 C 1, 2, 3, p. 9-10) Circumvention of NMS, and HAMP/2MP is prohibited, and its violations support all California causes of action alleged. (Hamidi v. Litton 34-2010-00070476-CU-OR-GDS (Cal. Supr. Ct. Sacramento Cnty. Oct. 10 2013; Corvello v. Wells Fargo Bank 728 F. 3d 878, 883-85 (9th Cir. 2013) Menan v. US Bank 924 F. Supp. 2d 1151, 1156-58 (E.D. Cal. 2013))

27.    Transfer Rules, Joint Liability re Servicing/Debt: The transferor and the transferee remain obligated and liable to perform under its SPA duties and the Program duties, which expressly include NMS, HAMP and 2MP, whether or not borrowers are eligible. (A, B, C - NMS; M-1-c, 2; A-31-32; A-23, IV D 1). SPA transfer rules require successors to honor prior agreements (Section IV.M), prohibit circumvention of obligations via transfer (Section 8.C(3)), and are bound by LENDER/SERVICER's promises as alleged. *(See, e.g., Schubert v. Bank of Am. N.A., No. 34-2013-00148898-CU-OR-GDS, 2014 WL 3977856, at 3 (Cal. Super. Ct. Sacramento Cnty. Aug. 11, 2014))* Subsequent failure to honor the promises and unlawful, void and or inaccurate demands for payment constitute a breach of that promise, rendering them liable to Plaintiffs. The transferee must *honor* the prior agreements made by the transferor. Named Defendants and each are *jointly and severally liable* for the pattern and practice common plan and scheme as alleged and may not avoid liability by using a non-SPA straw servicer or debt buyer. The old servicer must inform new servicer of the status of the First Mod and Subject Second, including disclosing all evaluations, disclosures, options, grants, denials, missing documents, status, and appeal notices. (NMS_ IV-M-1-a-d, 2, p. A-31-32; IV-D-1, p. A-23, IV-H-8, p. A-29) Any contract between old and new servicer must obligate the new servicer to continue processing and honor all promises made in loss mitigation. Any such contract between the transferor and transferee servicer or debt owners or collectors must *"designate that borrowers are third party beneficiaries"* of these requirements. (NMS IV-M-I-b-d, p.A-32.) If not a signatory, the new servicer must sign a SPA Assignment and Assumption Agreement. (SPA Exhibit D – Assumption) LENDER/SERVICER also failed to send the Plaintiffs a Transfer Notice and Assignment of such transfers. *"Servicer agrees that it must write down second liens*

*consistent with the following program…" "Second lien write-downs or extinguishments completed under proprietary modification programs."* (D-2, D-3.1.h, D-5.2.c.i.; 2.b.c (per HAMP 2MP); d.1.11;)

28.    <u>Transfer Obligations</u>: The Rules and Mandates expressly prohibit ***'circumvention of transferor's obligations,*** in part as follows:

> ***NMS****: **The effects of transfers and assignments under this Agreement are as follows** "(1) … The transferee or <u>assignee of Servicer's mortgage loans and servicing rights must assume Servicer's obligations</u> …, subject to the Service Schedules and the <u>Program Documentation</u> applicable to the Programs in which Servicer agreed to participate prior to the transfer or assignment." (A, B, C) NMS, 8 C (1)(*Amended & Restated) Commitment to Purchase Financial Instrument and Servicer Participation Agreement in Para 8 A, B, C: (1), (3); "(3) Servicer may not transfer or assign any mortgage loans or servicing rights to any third party in a manner that <u>is intended to circumvent, or has the effect of circumventing, Servicer's obligations</u> under the Agreement." "Mortgage loans and servicing rights are freely transferrable under this Agreement, subject to: (i) … notice and the execution and delivery of the Assignment and Assumption Agreement, in the form of Exhibit D …"* (A, B, C) NMS, 8 A; Transfer or Assignment) (SPA pg 67 8-A, B, C, (1-3).

29.    <u>Substantial Benefit</u>: This case confers a *substantial benefit* for Plaintiff, homeowners in retirement, the infirm, the elderly, and those suffering from economic recessions, epidemics or pandemics, and personal and financial hardships.

30.    <u>The California Supreme Court has already spoken and prohibited such despicable conduct</u>:

A.   <u>Estoppel, Waiver, Malicious Laches, Unclean Hands</u>: Named Defendants intentionally misled Plaintiffs to believe their Subject Second was resolved and extinguished for over 15 years and as such Named Defendants are not permitted to contradict it. (Morgan v Int'l Aviation underwriters, Inc. (1967) 250 Cal.App.2d, 176) Named Defendants are *estopped* from and have *waived* enforcement and collections of the Subject Second because they created excessive delays and created a *15-year period of silence, misrepresentation, omission, and concealment as a tool of fraud lulling Plaintiffs into a false sense of security* to lessen or destroy their rights or remedies, and defenses to the Malicious Debt Trap. Plaintiffs justifiably relied on the program expectations and conduct of the Named Defendants and did not seek legal advice or take action to enforce its rights and defenses, and incurred such loss, causing them to sue 15 years later. Fraud and bad acts cannot be used to lessen or destroy Plaintiff's rights and remedies, or benefit Named Defendants, either as a sword or shield. Named Defendants created a Malicious Period of Silence in a Malicious Debt Trap and are estopped and waived its rights to enforce a void Subject Second. (<u>Carruth v. Fritch</u>, [Cal. Supr. Ct., Dec. 12, 1950; 36 Cal.App.2d 426]) The doctrine of estoppel and waiver are invoked to rescue justice where a party seeking refuge behind the bar of the statute of limitations has conducted himself such that to apply the bar in his favor would shock the conscience of equity. (Ca. Evid. Code 623)

31.      Named Defendants refuse to cancel and release the Subject Second and its recorded public lien causing damages and injuries to Plaintiff.

32.      Named Defendants and each of them, acted recklessly in disregard of the harm it knew it would cause Plaintiffs. Plaintiffs suffered such damage, injury and harm. Named Defendants did so dishonestly, maliciously, cruelly, and arrogantly.

33.      Such debt and lien are void and barred under California law including AB 130 (CC 2924.13). Such malicious laches, intentional delay and Period of Silence, are unlawful practices and unlawful bad acts and a bar to collection or enforcement, rendering the debt/lien unenforceable. Any defense of statute of limitation are waived, barred or tolled in favor of Plaintiff, precluding such collection on the Subject Second, even if unsecured. (Motors, Inc. v. Times Mirror Co. (1980) 102 Cal. App. 3d 735, 740); Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal. 4th 163, 180.  Named Defendants as promisors *caused a malicious delay* in commencing this action and each is *estopped* from enforcement and the defense of the statute of limitations. Under California law, the statute of limitations does not begin to run until the injury is discovered upon knowledge (3/2026). Named Defendants refuse to release the Subject Second. (Van Hook v. S. Cal. Waiters Alli. 158 Cal. App. 2d 556, 568-69)

34.      Named Defendants failed to send Plaintiffs Billing Statements every billing cycle. (NMS_LENDER/SERVICER I-B-5, p. A-5-6; Settlement Term Sheet I-B-5-a,b,c,d,e,f,pg A-5, A-6)) A servicer or lender shall provide the consumer, for each billing cycle, a periodic billing statement with a detailed status of the loan, total balance due, interest accruals, payment allocations, unpaid principal, fees, escrow balances, its arrears, penalties, accumulations and other pertinent information. Named Defendants are prohibited from collections, foreclosures and charging Plaintiffs, interest accruals (lates or other charges) until after a 10 day mailing of notice to cure, re-activation of interest accruals, and formal compliant billing or notice statements on the Subject Second; which it failed to do. (CC 2954.5) Charged Off or Extinguished loans cannot accumulate or accrue interest without proper notices and billing statements per law and the Subject Second agreement and note. (Penal Charge; CC 2924.5 (e)) Named defendants waived such (unlawful) charges and collection rights and are estopped from collections, personal liability demands (BK discharge) or threatening foreclosure.

35.      Named Defendants used the stress-induced debt trap as a tool of coercion. Named Defendants started, initiated or continued foreclosure threats or collection activity unlawfully and prior to satisfying pre-condition mandates, including sending Plaintiffs accurate DEBT VALIDATION, reinstatement amounts and right to foreclose by certification upon competent evidence. (A, B, C- NMS I-B-10-a, p.A-7) Ignoring the Rules & Mandates and 'processes' including granting the Subject Second

extinguishment by a transferee of a signatory or transferees obligations (NMS IV, p. A-16, SPA 8C1,2,3, etc.) violates the rules and standards of care supporting all causes of action alleged. NMS A-18, p. A-4; I-B-10-a, p. A-7; I-A-1 p.A-1; I-A-18, p. A-4, I-C, p.A-8, CC 2924.12(g)) and assumed the role of implementing loss mitigation consideration and solutions represented in writing to Plaintiffs but wholly failed to do so and notify borrowers of loss mitigation options.  NMS IV-A-I, p.A-16; IV-D-6, p.A-24-25; HAMP HB v3.2-.3 Named Defendants failed to give borrowers a SPOC as required, handed the issues off to the other. (NMS IV-C, p. A-21, IV-C-4-9, p.A-22-23, A-28, H 1,2,3,4).

36.    Cancelled or extinguished debt expressly requires the debt holder to *relinquish all rights and remedies against the borrower(s)*.  LENDER/SERVICER failed to design and make available to Plaintiff a second lien program to *provide affordable payments* for the 1st and 2nd liens. (NMS_ A-30 J, 1, 2,3 4), Servicer never properly considered Plaintiffs for the SD 12-02 Tier 2 eligibility even if not eligible under HAMP 2MP Tier 1, and it **never disclosed or sent a denial letter** for the Subject Second, never disclosed any reasons for its denial, and never gave instructions or opportunity to contest or appeal same. ((NMS_ A-27, 2, 3). Plaintiff did all required of his (RMA form) but Named Defendants failed to evaluate him for all program benefits, and failed to send Plaintiff a Denial and Appeal notice (regarding 2MP/NMS, etc.) (NMS_ IV-F-7, p. A-26)

37.    Proprietary, NMS, HAMP 2MP Rules: Whether it's a proprietary, NMS, or a HAMP solution, they mirror the HAMP/2MP process, timelines, and Rules & Mandates, and require the grant of the second modification or its cancellation, extinguishment, release, and relinquishment as follows:

Modification Process: *"When Servicer reduces principal on a first lien mortgage via its* **proprietary modification process***, and a Participating Servicer owns the second lien mortgage, the second lien shall be modified by the second lien owning Participating Servicer in accordance with Section 2.c.i below…"* (D-2, D-3.1.h, D-5.2.c.i.) *"Required Second Lien Modifications: i. Servicer agrees that it* **must write down second liens** *consistent with the following program until its Consumer Relief Requirement credits are fulfilled…"* (D-4-5 at 2.c.i)) *"***Servicer shall extinguish** *and receive credit in accordance with Table I, Section 2.iii on any second lien that is greater than 180 days delinquent."* (B, D-5 at 2.c.2.a)) *"Otherwise, Servicer shall solve for a second lien payment* **utilizing the HAMP Second Lien Modification Program ("2MP")** *logic used as of January 26, 2012."* (B, D-5 at 2.c.2.a,b.; and d, e)) *"When a borrower's first lien is modified under HAMP, a participating second lien* servicer must offer to modify the borrower 's second lien *according to a defined protocol."* (MHA HAMP SD 09-05 Revised, M 26, 2010, Second Lien Modification Program 2MP, p.1, 3, 18-19; SD 09-05 (2MP/HAMP), pg. 1) (Emphasis Added)
2MP Timing: *"The modification of a second lien may not become effective unless and until (i) the modification of a* corresponding first lien becomes effective *under HAMP… in accordance with this Supplemental Directive."* (HAMP SD 09-05 Revised, M26, 2010, Second Lien Modification Program 2MP, p.10) (MHA HAMP SD 09-05 Revised, 2MP, p.11) (SD 09-05 (2MP/HAMP),

Page 8) (Exhibit 7 – LENDER/SERVICER Written Agreement of First Lien Modification; Modification Effective Date of 12/1/2011) (Emphasis Added) "*If there was principal forbearance or forgiveness on the HAMP-modified first lien, a servicer must forbear principal on the second lien in the same proportion.*" (HAMP SD 09-05 Revised (2MP) p.7 Step 4) Servicer did not offer forbearance or forgiveness in proportion to the FIRST MOD; or offered much less favorable or equivalent benefits.

38.     Subject Second Relinquishment of Rights Against Borrowers: LENDER/SERVICER granted the First Mod, and Plaintiffs' Subject Second exceeded $5,000 UPB and monthly payment exceeded $100, therefore, *"Servicer shall extinguish and receive credit…" "Otherwise, Servicer shall solve for a second lien payment utilizing the HAMP Second Lien Modification Program ("2MP") logic used as of January 26, 2012."* (B (D-5) NMS and MHA HAMP 2MP mandates LENDER/SERVICER to either modify or cancel (release, charge off, extinguish and relinquish) the Subject Second. NMS and HAMP 2MP mandates that LENDER/SERVICER, relinquish all rights to the collection of same from borrowers. (A, B, C - NMS, HAMP SD 09-05 Revised, M26, 2010, Second Lien Modification Program 2MP, p.18-19) LENDER/SERVICER, failed to honor the relinquishment of all rights against the borrowers (Plaintiffs) as mandated by the promises of LENDER/SERVICER, and or the law and HAMP 2MP. The law mandates the relinquishment of all rights against the debtor borrowers:

Extinguishment Option:*"When the extinguishment option is utilized, the second lien servicer, investor and any mortgage or other insurer must relinquish, in whole or in part, all rights and remedies against the borrower(s) related to the portion of the second lien obligation that is forgiven, ... (MHA HAMP SD 09-05 Revised, M 26, 2010, Second Lien Modification Program 2MP, p.18)"Following an extinguishment of the entire second lien, servicers must take all necessary action to cancel the indebtedness and release the second lien in a timely manner."*(NMS, MHA HAMP SD 09-05 Revised, M 26, 2010, Second Lien Modification Program 2MP, p.18, 19)  (SD 09-05 (2MP/HAMP), p. 8, 17.) *(Emphasis Added)*

Plaintiffs had expectations of a complete default loan solution including the modification of the first and second mortgage to obtain complete *affordability*, **from '***all possible workout assistance options available …***'** including with NMS, MHA, PRA, HAMP 2MP. (All Possible Workout Assistance Options Available) (West v. JPMorgan Chase Bank, N.A., 214 Cal.App.4th 780 (2013); (MHA Handbook v3.4, Sec. 1.4, p.20)) Such expectations are also imposed on the Plaintiffs and Named Defendants by public policy and Rules and Mandates, and as promised by LENDER/SERVICER. LENDER/SERVICER omits and conceals disclosure of the full solution options, procedures, explanations, and criteria as required by the Rules and Mandates, all contrary to its promises and HAMP 2MP NMS policy and benefits.

Named Defendants represented that it had loss mitigation authority and would process Plaintiffs for all default solutions competently and honestly and as to NMS, HAMP and 2MP, and or to cancel or extinguish the Subject Second. (Pulley v. Wells Fargo Bank, 2015 WL 1393417 (N.D.

14
ORIGINAL COMPLAINT

Cal. Nar. 26, 2015); Bushell v JP Morgan Chase Bank NA 220 Cal. App. 4th 915, 930-1 (2023); Medrano v. Caliber Homes Loans, Inc.  WL 7236925, at *9 (C.D. Cal. Dec. 19, 2014); Khan v. ReconTrust 81 F. Supp. 3d 867, 874-75 (N.D. Cal. 2015) (See Exhibit 1- NOC).

39. But for such concealment, false promises, omissions, and misrepresentations as alleged herein, Plaintiffs would not have agreed to the TPP and the first lien modification, without the Subject Second solution at the same time to ensure its complete resolution. Plaintiff was tricked by LENDER/SERVICER (to accept the TPP and first lien modification and wait for the Subject Second resolution as instructed. LENDER/SERVICER represented that it would resolve *affordability completely*.

40. LENDER/SERVICER admits it is not honoring HAMP 2MP and or NMS, and or its protocol benefits in a common plan and scheme to defraud. These are now questions of fact for the jury at trial. (Cal. Evid. Code §623)

41. Limitation of Actions: Plaintiffs allege California causes of action only. There is no private right of action under HAMP. Such violations of the Rules and Mandates, and public policy violations, and are independent evidence supporting all California causes of action and California remedies as alleged herein. No federal causes or actions are alleged. This lawsuit also protects the Plaintiffs and the California public at large. The Plaintiffs are not alleging an NMS cause of action unless or to the extent that the breach of contract regarding the failed transfer, according to NMS incorporating HOBR and damages. Plaintiffs allege only California causes of action as alleged.

42. Violation & Breach of Duties, Deed of Trust/Note, Law, Bankruptcy, NMS/HAMP: Personal Liability Collection Demand in Violation of Bankruptcy to Plaintiffs (1) for collection of the Subject Second, and (2) demanding personal payment of the claimed debt.  The Deed of Trust and Note also state that foreclosure must be discontinued according to "Applicable Law" pending "Cures" of default. Named Defendants are obligated to but failed to comply with "Applicable Law" and NMS/HAMP standards which include the duty to notify Plaintiffs of all options to evaluate them for a "modification" and not to frustrate the payment obligation of the DOT/NOTE, as also defined by NMS and HAMP. (C - NMS_LENDER/SERVICER_A-16, IV A 1) *"Servicer shall commence outreach efforts to communicate loss mitigation options ... to all potentially eligible delinquent borrowers...beginning on timelines that are in accordance with HAMP...**regardless of whether the borrower is eligible for a HAMP modification**....Servicer shall conduct affirmative outreach efforts to inform delinquent second lien borrowers...about the availability of payment reduction options."* (Emphasis Added) (A, B, C - NMS_LENDER/SERVICER A-23, IV D 1; HAMP or Proprietary) The NMS requires the Servicer to notify the Borrower of all cure options. The NMS states: 4(B), "Explain Programs for Which the Borrower Is Eligible." (C), "Explain the Requirements of The Programs to Which The Borrower is Eligible." (D),

"Explain Program Documentation Requirements." (K), "Help to Clear for Borrower the Internal Processing Requirements." (L) "Comply With H.A.M.P." Which is the Making Home Affordable Program ("MHA"). (HAMP SD 09-01; Hh3.0-4.0) (Exhibit 16 – NMS; A, D, E, F pg. A -22, A-18-26, etc.) LENDER/SERVICER failed to send Plaintiffs a denial, notice or explanation of not granting them a Subject Second modification.

43.    LENDER/SERVICER Duty to Evaluate & Process Under Rules & Mandates, Whether or Not Proprietary: *"[S]ervicers must evaluate any loan that is being considered for HAMP with a mark-to-market loan-to-value (MTMLTV) ratio greater than 115 percent using both the standard HAMP modification waterfall (Standard Waterfall) and an alternative modification waterfall that includes principal reduction as the required second step in the waterfall (Alternative Waterfall)."* (HAMP SD 10-05 page 2) Plaintiffs were eligible for both a HAMP first and second modification, and or extinguishment. LENDER/SERVICER failed to perform a HAMP and 2MP evaluation of the Plaintiffs' loans. LENDER/SERVICER failed to comply with its duty to verify and use information that is not over 90 days old. (HAMP SD 09-01, pg. 5; TPP)

44.    Refusal to Release Lien: Servicer continues to refuse to release the (void) lien. *'Extinguishment of a second lien also eliminates the underlying debt, reducing the account balance to zero'*, (A, B, C- California Commitment NMS, NMS_A-28, H 6). The Rules and Mandates require the Lender/Servicer to *properly, timely and unambiguously confirm and verify with competent and reliable evidence* the status of the Subject Second (NMS_LENDER/SERVICER I-A-1. P.A-I) and *implement the process and review of competent evidence to determine the status of the Subject Second, and requisite authority to foreclose.* Named Defendants failed to send Plaintiff all such information on *status, sales, transfers, assignments, owner or servicer changes*, *modifications, cancellations, releases, and relinquishment notices, disclosures*, and otherwise related documents. (NMS_LENDER/SERVICER I-A-18, p. A-4, I-C, p. A-8) The conduct of LENDER/SERVICER violates all such laws and disregards California public policy and consumer public interests. Plaintiffs never received any such notice. Plaintiff justifiably relied upon Named Defendants that the 2nd mortgage was canceled and was rescinded. Plaintiff had no duty to investigate the public record under the facts, law and Rules and Mandates including Medrano v. Caliber Homes Loans, Inc.  WL 7236925, at *9 (C.D. Cal. Dec. 19, 2014) (See Exhibit 1-NOC).

45.    Credit Reporting Violations: Named Defendants *"...assumed a vital role…"* (CC 1785.1(b)) to *"...exercise their grave responsibilities with fairness, impartiality and a respect…"* (CC 1785.1(c)) and act *"...in a manner which is fair and equitable to the consumer, ...with accuracy…"* (CC 17851.1 (d)).

Additionally, as part of the common plan and scheme to defraud Plaintiffs and others similarly situated, Named Defendants created a 15-year Malicious Debt Trap, and a period of silence to defraud Plaintiffs with a (false) cancellation of the Subject Second. Named Defendants are jointly and severally liable for each willful, inaccurate or failed (monthly) credit reporting violations for each month over the 15 year Malicious Debt Trap (California Consumer Credit Reporting Agencies Act ("CCRAA"), in part from the dates failure to send account billing statements, and from the FIRST MOD 12/1/11 to date. "*Servicer shall not make inaccurate payment delinquency reports to credit reporting agencies when the borrower is making timely reduced payments…*" (NMS, A-28, H 6, etc.)  In 2026 Plaintiffs discovered such credit reporting violations including - Saxon Discharged in BK. Plaintiffs discovered that LENDER/SERVICER was reneging on its promises. LENDER/SERVICER failed to report the positive credit for making all timely First Modification and caused Plaintiff hurting his FICO score.

46.     As such, Plaintiffs are also entitled to Actual, Statutory, Punitive, Attorney fees, Treble Damages, and Emotional Distress damages and injuries plus litigation costs, interest, loss of value and equity appreciation of property due to the wrongful Subject Second (lien), loss of use and enjoyment of home, loss of opportunities, extreme emotional distress causing physical injuries, failure of proper positive credit reporting, and exacerbation of medical conditions, for each bad act or violation, over the approximate 15-year Malicious Debt Trap period continuing to date, etc. Plaintiff is entitled to the remedies under each cause of action as part of the common plan and scheme, including the CC § 1788 et seq. and CC § 1785.1, 1785.3 et seq., for all violations, whether negligent or willful.

47.     The Purpose of NMS, MHA HAMP 2MP:  The National Mortgage Settlement and related Court Decrees are public policy and mandated standards of care and process. LENDER/SERVICER is obligated to comply with the NMS/The California Commitment and Decree. Such policy and process mirrors MHA HAMP 2MP.   HAMP and HAMP/2MP are mandatory duties imposed on LENDER/SERVICER by agreement with the United States Treasury: "*When Chase Bank received public tax dollars under the Troubled Asset Relief Program,(3) it agreed to offer TPP's and loan modifications under HAMP \*797 according to guidelines, procedures, instructions, and directives issued by the Department of the Treasury. (Wigod, supra, 673 F.3d at p. 556.)*" "*The SPAs stated that servicers 'shall perform the loan modification ... described in ... the Program guidelines and procedures issued by the Treasury ... and ... any supplemental documentation, instructions, bulletins, letters, directives, or other communications ... issued by the Treasury.'*" 2MP is a supplemental directive. (West v. JPMorgan Chase Bank, N.A., 214 Cal.App.4th 780 (p.12, p.7, Westlaw) (2013) (Emphasis Added); NMS, HAMP 2MP. The cornerstone of MHA is the HAMP program, which provides eligible homeowners the opportunity to

reduce their monthly mortgage payments to more affordable levels. (https://home.treasury.gov/data/troubled-assets-relief-program/housing/mha).

48.    NMS, HAMP 2MP Mandatory Standard of Practice: NMS, MHA and HAMP are the ***"standard industry practice for purposes of all Federal and State laws"*** (Section 129 of Emergency Economic Stabilization Act of 2008), ***"usual and customary industry standards"*** (SD 09-01 (April 6, 2009) at page 1), standards of performance, duties, custom and practice, and applicable state and federal regulations and laws. (SD 09-01 cited by Wigod v. Wells Fargo Bank, N.A. No. 11-1423; 2012 WL 727646 (7th Circuit, Ill Mar. 7 2012)*24). Rules and Mandates are public policy and mandated. (Cali. Supr. Ct, Biakanja v. Irving (1958) 49 Cal.2d 647) Violations of HAMP 2MP Rules and Mandates standards, policy, and laws support the causes alleged and the elements of negligence (per se). (Wigod at 19-29; West, supra)

49.    *"Each servicer and any sub-servicer that the servicer uses will be subject to and must fully comply with all federal, state, and local laws, including statutes, regulations, ordinances, administrative rules, and orders that have the effect of law, and judicial rulings and opinions including, but not limited to, the following laws that apply to any of its practices related to MHA."* (HAMP) (MHA Handbook v3.3 Chap. 1, page 24 and: laws prohibiting unfair or deceptive acts or practices (UCL), laws prohibiting discrimination, laws or regulations and guidelines imposing disclosure requirements and restrictions relating to transfers of the servicing of certain loans (1.4 Transfer of Servicing), laws prohibiting abusive debt collection practices (Rosenthal) and laws regulating the collection, dissemination, and use and reporting of consumer credit information (CCRAA).

50.    Plaintiffs Have Privity: *"...HAMP does not preempt or otherwise displace state law causes of action. The court also recognized a borrower may assert state law claims, such as breach of contract, based directly on a TPP agreement because the* **borrower is in direct privity with the lender or loan servicer**. *(Wigod, supra, at p. 559 & fn. 4.) We do not address whether HAMP creates a private right of action because West has asserted only California state law claims." (West v. JPMorgan Chase Bank, N.A., 214 Cal.App.4th 780* (p.8 Westlaw) (2013) (Emphasis Added); MHA/HAMP/2MP) Successor servicers are obligated to honor and expressly assume the predecessors' promises and the additional responsibilities including HAMP 2MP requirements. (MHA Handbook v3.4, Section 1.4, p.20) Pursuant to CC 2920.5 (c)(2), Plaintiffs are borrowers for all purposes alleged herein.

## PARTIES & CAPACITY

51.        At all times relevant herein, **KARL JUSTIN KEENER** ("Plaintiff") owns and has an ownership interest in the Subject Property. ("HOME", "Subject Property") At all relevant times, the Plaintiff used the Subject Property as his primary residence. Such real property or home is unique under California law.

52.        At all times relevant herein, Named Defendants including the Prior Servicer and Current Servicer to Plaintiff's second mortgage, secured by the Subject Property, doing business in the County of San Diego, State of California, including Saxon and SLS and any new parents or subsidiaries to be discovered and named as Does.

53.        Plaintiffs are ignorant of the true names and capacities of the individuals, corporations, and entities sued herein as Does 1-100, inclusive, and therefore sued each Defendant by fictitious names under California Code of Civil Procedure, section 474. When Plaintiffs learn the true names and capacities of these Defendants. The Plaintiffs will seek leave of court to amend its Complaint accordingly or correct names and capacities by filing an amendment. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named Defendants is responsible in some manner for the occurrences, obligations, harm, or defects alleged in this Complaint. Whenever there is a reference in the Complaint to any Defendant, the reference shall be deemed to include Does 1 through 100. All Named Defendants acted in a common plan and scheme and are jointly and severally liable as alleged.

## JURISDICTION, VENUE

54.    This Court has subject-matter jurisdiction over the causes of action alleged in this complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

55.    This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and subject County, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California, and or have voluntarily registered and or submitted to California jurisdiction. California Code of Civil Procedure § 410.10.

56.    This Court is the appropriate venue for this action under California Code of Civil Procedure §§ 395 and 395.5, because the acts that give rise to the causes of action alleged herein occurred in San Diego County, State of California, as the place of proper venue.

**FIRST CAUSE OF ACTION**
**Violations of California Civil Code § 2924.13 et al**;
(Ongoing Collections, Threats & Foreclosure Activities;
'Prior and Current' Servicers Retroactive
(Against All Named Defendants)

57.     Plaintiffs re-allege and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

58.     <u>Malicious Debt Trap of Second Mortgage Debt/Lien</u>: On or about 12/22/2011, Provident Funding granted Plaintiff a First HAMP Mortgage Modification (FIRST MOD) which triggered the duty to evaluate the Second Mortgage Lien for the promised complete (First and Second) resolution. HAMP 2MP also contains the 'expectations' of the parties. (West v PJ Morgan Chase) Plaintiff was entitled to certain rights and benefits mandated to reduce or extinguish the Second mortgage debt, release of the lien, and relinquishment of all rights against the borrower. (Supplemental Directive HAMP 2MP (S.D. 09-05 Revised; US Treasury)

59.     Named Defendants represented to Plaintiff on the phone and in writing that the Second was cancelled and extinguished. <u>Some 15 years ago</u>, Saxon (Servicer) represented to Plaintiff on the phone that the Second was resolved, written off and charged off, cancelled or extinguished.  In fact, in 2011, Plaintiff received a **1099-C (Notice of Cancellation of Debt) of the Second**. (**Exhibit 1 – Notice of Cancellation; "Unlawful Practice" Violation per CC 2924.13**) Plaintiff was led to believe and justifiably relied upon such representations for over 15 years.  On information and belief, Named Defendants failed to release the lien and relinquish all rights against the borrower Plaintiff.

60.     However, upon learning of the new California AB 130 law (Eff. 7/1/25), Plaintiff discovered that Named Defendants were acting in a common plan, scheme and design to defraud Plaintiff out of the cancelled or extinguished Second, his CC 2924.13 protections, and the consumer rights and benefits of HAMP 2MP ("2MP"), and National Mortgage Settlement ("NMS").

61.     On or about 2/20/12, Saxon (Servicer) transferred servicing to Specialized Loan Servicing, LLC. (Prior Servicer and Current Servicer)

62.     No transfer notice to or from Morgan Stanley Cap Holding was sent to Plaintiff.

63.     On or about 3/16/26 Plaintiff requested that Named Defendants send Plaintiff confirmation that the lien has been released and a reconveyance was recorded without response. . On <u>3/23/2026</u> Saxon admitted by email that it couldn't confirm payoff of the Second, and confirmed all files and documents were sent to SLS.

64.        CC 2924.13 NOD-CERT: Named Defendants have not filed a Notice of Default (NOD) Certification (NOD-CERT) form.  Such certification requires admission that it did **"engaged in an unlawful practice described in subdivision (b)"** for failure to send some 15 years of required account statements, lack of communications, or if it **"misrepresented its compliance history"** by concealment and non-disclosure of all of its rights and benefits under all programs including HAMP 2MP/NMS consumer rights and benefits.

65.        **Violations of California Civil Code § 2924.13 et al: Summary of California Civil Code § 2924.13California Civil Code § 2924.13** regulates nonjudicial foreclosure proceedings on subordinate mortgages (junior liens, such as second deeds of trust) encumbering residential real property. It imposes requirements on mortgage servicers to certify compliance history and provide borrower notices before initiating foreclosure, targeting dormant or "zombie" second mortgages.

66.        **Key Definitions (Civ. Code § 2924.13(a)) Plaintiff qualifies and has standing to invoke this law effective 1/7/25 by the criteria, and violations by current Named Defendants (including current servicers and prior servicers retroactively (a)(2)) as enunciated herein and in each and all causes of action stated:**

- **(a)(1)**: "Borrower" has the same meaning as defined in Section 2929.5.
- **(a)(2)**: "Mortgage servicer" includes the **current mortgage servicer and any prior mortgage servicers.**
- **(a)(3)**: "Subordinate mortgage" means a security instrument in residential real property, including a deed of trust and any security instrument that functions in the form of a mortgage, that was, at the time it was recorded, subordinate to another security interest encumbering the same residential real property.

As used in this section, Plaintiff satisfies and has standing as enunciated herein this section and by the fact (and prima facie allegations) that ongoing collection and foreclosure activity continues for **prior and current servicers** retroactively to date. Foreclosure sale has not occurred as yet, but such default notices and threats have occurred and continue to the date of this filing of this action, and after the effective date (7/1/25) of the new California law (AB 130; CC 2924.13 et al) which expressly requires strict compliance with the **Pre-Foreclosure Requirements (Civ. Code § 2924.13 et al. including 2924.13(c)) sections (see below) including a CC 2924.13 Declaration with a simultaneously recorded and served Notice of Default, including express declarations indicating whether "unlawful practices" occurred.** By definition, wrongful conduct of prior or current servicers defines "unlawful practices" which is this case also arise from ongoing and continuing torts, duties and foreclosure activity. **((a)(2)**: "Mortgage servicer" includes the current mortgage servicer and any prior mortgage servicers.) The California AG officially affirmed that AB 130 (CC 2924.13) is **retroactively applied to "prior" and or "current" wrongdoing** in part as follows:

21
ORIGINAL COMPLAINT

"In determining whether Section 2924.13 should be given retroactive effect, this Court should look to the same factors that it does whenever it must determine the Legislature's intent to effectuate the law's purpose, including the statute's purpose, legislative history, and public policy. See Sierra Club v. Superior Ct., 57 Cal. 4th 157, 166 (2013); see also Preston, 25 Cal. 4th at 222 (relying on statements in the legislative history regarding the statute's purpose to conclude that the legislature intended it to be retroactive). Section 2924.13's legislative history and purpose demonstrate that the Legislature intended retroactive application with respect to the unlawful practices in subdivision (b). The Legislature specifically called out certain zombie mortgages that were originated prior to the 2008 financial crisis and declared its intent to protect borrowers from such mortgages. Dkt. No. 20-2 at 20. It noted that many borrowers of these mortgages faced years of noncommunication or were told that their loans were forgiven as part of a loan modification during the financial crisis, years or even decades ago. Id. If these backwards-looking predatory practices could not be deemed "unlawful" because they occurred prior to the statute's enactment, the borrowers that the Legislature specifically identified would be essentially entirely unprotected from such practices. Interpreting the statute in this way would violate the "most fundamental rule of construction, namely that a statute must Case 2:25-cv-02614-DAD-CKD Document 50 Filed 03/05/26 Page 2 of 4 Page 2 be interpreted so as to effectuate legislative intent." Russell v. Superior Ct., 185 Cal. App. 3d 810, 818 (Ct. App. 1986) (cleaned up); see also Bank of Am. v. Angel View Crippled Children's Found., 72 Cal. App. 4th 451, 458 (Ct. App. 1999) (noting that "the remedial nature of the statute, and the 'evils to be remedied,' can be taken into account when reviewing a statute for an implied retroactive intent," and finding that the protective purpose of the challenged statute made it "eminently reasonable to conclude the Legislature would intend to apply its remedy" retroactively).1" (Rob Bonta, AG, 3/5/26)

67.    **Pre-Foreclosure Requirements (Civ. Code § 2924.13(c)):** "A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not conduct or threaten to conduct a nonjudicial foreclosure until the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent does both of the following:

> (1) Simultaneously with the recording of a notice of default, records or causes to be recorded, in the office of the county recorder of the county that the encumbered property is located, a certification under penalty of perjury that either: **(A) The mortgage servicer did not engage in an unlawful practice as described in subdivision (b). (B) <u>The mortgage servicer lists all instances when it committed an unlawful practice as described in subdivision (b)</u>**. (2) Simultaneously with the service of a recorded notice of default, sends both of the following documents to the borrower by certified mail with return receipt requested to the last known mailing address of the borrower: (A) A notice providing that if the borrower believes the **mortgage servicer engaged in an <u>unlawful practice</u>** described in subdivision (b) or **misrepresented its <u>compliance history</u>**, the borrower may petition the court for relief before the foreclosure sale. (B) A copy of the certification recorded pursuant to paragraph (1). (Em. Added) **Unlawful Practices (Civ. Code § 2924.13(b)):**

The following conduct constitutes an unlawful practice in connection with a subordinate mortgage alleged herein against Named Defendants:

- **(b)(1):** <u>3 YEAR PERIOD(S) NO WRITTEN COMMUNICATION</u>: "The mortgage servicer did not provide the borrower with any written communication regarding the loan secured by the mortgage for at least three years."

- **(b)(2)**: <u>FAILED LOAN SERVICER TRANSFER(S):</u> "The mortgage servicer failed to provide a transfer of loan servicing notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Real Estate Settlement Procedures Act, as amended (12 U.S.C. Sec. 2601 et seq.), and investor or guarantor requirements."
- **(b)(3)**: <u>FAILED LOAN OWNERSHIP TRANSFER(S):</u>"The mortgage servicer failed to provide a transfer of loan ownership notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and investor or guarantor requirements."
- **(b)(4)**: <u>THREATENED FORECLOSURE AFTER CONTRARY REPRESENTATIONS</u>: "The mortgage servicer conducted or threatened to conduct a foreclosure sale after providing a form to the borrower indicating that the debt had been written off or discharged, including, but not limited to, an Internal Revenue Service Form 1099."
- **(b)(5)**: <u>THREATENED FORECLOSURE AFTER LONG-DORMAT OR TIME-BARRED DEBT</u>: "The mortgage servicer conducted or threatened to conduct a foreclosure sale after the applicable statute of limitations expired."
- **(b)(6)**: <u>FAILED NOTICES OF BILLING STATEMENTS</u>: "The mortgage servicer failed to provide a periodic account statement to the borrower when required to provide that statement by law, including, but not limited to, the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and investor or guarantor requirements."

"**Borrower Protections and Remedies**

- **Injunction Pending Petition (Civ. Code § 2924.13(d))**: "Upon a borrower's petition to the court for relief before the foreclosure sale, the **court shall enjoin** a proposed foreclosure sale pursuant to a power of sale in a subordinate mortgage until a final determination on the petition has been made."
- **Affirmative Defense in Judicial Foreclosure (Civ. Code § 2924.13(e))**: **"It shall be an affirmative defense in a judicial foreclosure proceeding <u>if the court finds the mortgage servicer engaged in any of the unlawful practices</u> specified in subdivision (b)."**
- **Equitable Remedies BAR FORECLOSURE (Civ. Code § 2924.13(f))**: "The court may provide equitable remedies that the court deems appropriate, depending on the extent and severity of the mortgage servicer's violations. The equitable remedies may include, but are not limited to, striking all or a portion of the arrears claim, **barring foreclosure**, or permitting foreclosure subject to future compliance and corrected arrearage claim." (Emp. Added)
- **Post-Sale Relief (Civ. Code § 2924.13(g))**: "A borrower may also petition the court to set a nonjudicial foreclosure sale aside when a certification required by subdivision (c) was never recorded or when a certification recorded pursuant to subdivision (c) indicates that the mortgage servicer engaged in an unlawful practice described in subdivision (b) or misrepresented its compliance history."
- **Limitation on Invalidating Sales (Civ. Code § 2924.13(h))**: "Any failure to comply with the provisions of this section shall not affect the validity of a trustee's sale or a sale in favor of a bona fide purchaser."

Plaintiff is entitled to an order to **bar the foreclosure** due to misdeeds and **admitted "Unlawful Practices"** and creation of the lack of documents to conceal further bad acts and violations of law (as

---

23
ORIGINAL COMPLAINT

alleged throughout this complaint and to be discovered), attorney fees, costs, actual damages, loss of rental business income and appreciation, and other relief to be proved at trial or hearing, including Release of Lien, and Relinquishment of all rights against the Borrower.

### SECOND CAUSE OF ACTION
Fraud & Deceit, Promises Made Without Intent to Perform;
Misrepresentation; Concealment; Omissions, Fraudulent Inducement
(Civil Code §§ 1572, 1709-1713); Common Plan, Scheme & Design;
Prejudicial to Public Policy & Public Interest
(Against All Named Defendants)

68.    Plaintiffs re-allege and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

69.    Concealment, Promises Without Intent to Perform/Misrepresentation: The promises, representations and expectations are contained in the HAMP 2MP/NMS directive and case law. (West v. JPMorgan Chase) Servicer concealed disclosure of Plaintiff's rights and consumer benefits including HAMP 2MP/NMS, etc. As alleged above, Lender/Servicer granted a TPP and then the FIRST HAMP MOD (Exhibit 2). Servicer refuses to honor the extinguishment and release the debt and subject Lien and make demands for payment under the threat of foreclosure. The conduct alleged supports this fraud cause of action independently and also with all causes of action with the violations as alleged of the Rules & Mandates.

70.    Servicer misrepresented the consumer mortgage default programs including concealing its evaluation of Plaintiff for all options.

71.    Servicer failed to send all account billing statements as required, ownership transfers, servicing transfers, and written communications including as mandated by CC 2924.13 et seq. Such lulled Plaintiffs into a false sense of security, causing them to justifiably rely on the promises contained in the TPP, First Mod, and the Subject Second extinguishment. (Pulley v. Wells Fargo Bank, 2015 WL 1393417 (N.D. Cal. Mar. 26, 2015)) Servicer and the other Named Defendants refused to honor and did renege on the extinguishment of the Subject Second and refuse to release the debt/lien. (Khan v. ReconTrust Co., 81 F. Supp. 3d 867, 874-75 (N.D. Cal. 2015); fraud claim based on completed TPP and FIRST HAMP MOD, and facts alleged.

72.    Servicers were obligated to disclose 2MP/NMS and all options to Plaintiffs. Servicer failed to do so and concealed such from Plaintiff.

73.    The true facts were Servicer never intended to honor its promises, representations (omissions) and expectations (HAMP 2MP/NMS) to (1) competently evaluate Plaintiff for a complete solution of its first and second mortgage debt as requested and expected as triggered by the grant of the

FIRST HAMP MOD, the MHA HAMP RMA applications and the Rules & Mandates, and (2) honor its duty to release the lien and relinquish all rights against the borrower.

74. Named Defendants created a 15-year period of silence to benefit from a Malicious Debt Trap to coerce Plaintiff into paying off the Second contrary the Rules & Mandates including CC 2924.13 as "Unlawful Practices".

75. Prior Servicer and Current Servicer acted recklessly or intentionally and intended to harm Plaintiffs, deny Plaintiff's 2MP/NMS rights and benefits. Named Defendants transferred the Subject Second to a straw sub-servicer to circumvent compliance with the Rules & Mandates

76. A cancelled, written off or extinguished Second debt is void, false-in-fact, a sham, and or cannot support a lien.

77. At the relevant times, when LENDER/SERVICER, made these misrepresentations, concealed information, failed to honor promises, representations and expectations, failed to disclose material information as set forth herein, and continued in furtherance of the common, plan, scheme and design, to defraud Plaintiffs with a malicious debt trap, knowing its conduct to be inconsistent with the Rules & Mandates, knew such was false and misleading and or acted in reckless disregard of their truth or falsity, and made the misrepresentations and/or concealed information with the intent to defraud and deceive Plaintiffs, with the intent to induce Plaintiffs to enter into and perform under the TPP and First Mod, and mislead Plaintiffs to believe that the Subject Second was extinguished for some 15 years. Plaintiffs made demands from the Named Defendants to correct their information and cease their demands for payment to no avail.

78. In furtherance of a common plan, scheme and design, Named Defendants failed to comply with the Rules & Mandates, standards, public policy and guidelines, created a period of silence for some 15 years, in part by underlining concealing *billing statements, notices, accurate status reports, accurate demands, and notices of transfer(s) of ownership and pr servicing, sale(s), and assignment(s)*. (D, NMS_ I-B-5,p.A-5; I-B-10-A, P.a-7, etc.)

79. Plaintiffs justifiably relied on Named Defendants conduct and had no reason or duty to investigate such further. Plaintiffs reasonably relied upon such representations and believed their second mortgage default solution was resolved by extinguishment. At relevant times, each named defendant was in a superior position of knowledge and control over the transactions. Plaintiffs had no duty to independently investigate or verify such representations. In reliance Plaintiff faithfully made payments for some 15 years, continuing to date on the First Mod as current. Plaintiffs relied upon such promises, representations (omission) and expectations for some 15 years to date, and in reliance Plaintiff also made

home improvements, and continuing maintenance and upkeep. Such efforts and monetary expenditures by Plaintiffs were caused by the named defendants as additional damage. (West v. JP Morgan Chase Bank, 214 Cal. App. 4th 780, 793-94 (2013); Peterson v. Wells Fargo Bank, N.A., 2014 WL 3418870, at *7 (N.D. Cal. July 11, 2014))

80.    At no time during the 15 years of silence to date did Named Defendants inform the Plaintiff of the true facts, including the fact that Named Defendants secretly assigned, sold, or transferred servicing or ownership, failed to verify actual records including all documents from the prior and current Servicer, ad or otherwise concealed same, and created the 'lack of records' as a malicious defense to this legal action. On information and belief, LENDER/SERVICER may have reported this transaction to the Treasury/Fannie as an extinguishment, which may have been eligible for (incentive) payments, and also as an insurance claim for payment (benefits to Named Defendants).

81.    Duty to be Honest in California, Bad Faith: A misrepresentation alone gives rise to a duty in California. In a misrepresentation, promises without intent, or concealment claim, a duty may arise from the making of or omitting the false or misleading representation itself. (Morgan v. AT&T Wireless Serv., Inc. (2009) 177 Cal.App.4th 1235, 1262.)  Plaintiffs had every reason to believe and did so, that Named Defendants would act honestly and in "good faith" in their dealings with Plaintiff. Bad faith includes making promises without the intent to perform and 'honor' its promises. A reasonable consumer, like Plaintiff, is likely to be misled into believing such promises.  Named Defendants had an obligation to grant the First Mod and also find a solution for the Subject Second under the reasoning in West v. JP Morgan (214 Cal.App. 4th 780 (2013)), which includes guidelines in NMS, and HAMP 2MP, whether or not it granted an *in-house proprietary* solution or Plaintiff was not eligible for any paraticular Program. (Lueras v. BAC (221 Cal.App. 4th 49, 71-72 (2013). Some 15 years later, Named Defendants wrongfully reneged on their promises.

82.    But For: Had the Plaintiff been aware of the material misrepresentations, omissions and concealments by Named Defendants, the Plaintiffs would not have agreed to the TPP and or First Mod and paid the same for over 15 years, without the complete default solution including the Subject Second. Such fraud, intentional and bad acts, support each of the causes of action alleged herein, and such harm is in addition to and independent of the TPP and the First Mod. (Robinson Helicopter Company v. Dana Corporation (2004) 34 Cal.4th 979, at 991; fraud based on TPP and promises for modification (or here complete solution (1st and 2nd)); Bushell v JP Morgan Chase Bank NA 220 Cal. App. 4th 915, 930-1 (2023)

83.    Lulled into False Sense of Security: Named Defendants led Plaintiffs to believe that it would review Plaintiff for **all default solutions and options** (MHA HAMP 2MP/NMS) on multiple occasions

in late 2013 to date, including advertisements online and or by email and or on the phone or in writing. Although Named Defendants had Plaintiffs apply on a MHA HAMP 2MP RMA form, it concealed and or misrepresented that it was secretly steering them away from a 2MP/NMS solution, (without proper mandated Disclosures) only to learn 15 years later that it didn't include a Subject Second solution. Named Defendants fraudulently concealed the common plan and scheme and design for some 15 years to induce a false sense of security in the lessening and or destruction of Plaintiffs rights contrary to California Supreme Court prohibitions in Carruth v. Fritch, [L. A. No. 20946. In Bank. Dec. 12, 1950; 36 Cal.App.2d 426]

84.    Named Defendants made promises, concealed and omitted to disclose key facts and program options which the Plaintiffs justifiably relied upon to expect the complete solution.

85.    Unjust Enrichment: Plaintiffs lost all monies paid on the TPP, first lien modification, and the Subject Second, and attorney fees, litigation costs, home improvement expenditures, loss of value equal to the amount of the Subject Second and lien, and other damages to proven at trial. Plaintiffs lost full use and enjoyment of their home, retirement, and equity retirement and lifetime appreciation without loss of the lien amounts and incurred other damages and injuries, including but not limited to suffering from extreme emotional distress and physical injuries. Plaintiff is unfairly harmed and Named Defendants were unjustly enriched.

86.    The conduct herein alleged against Named Defendants, was the direct and proximate cause of damages and injuries suffered by Plaintiffs, in an amount to be proven at trial. In addition to the fraud concealment (omission) and false promises [§§1572; 1709, 1710, 1711, 1712, 1713, 3294, 3333]; the conduct alleged also constitutes constructive fraud. [Constructive Fraud C.C.C. §§ 1573, 1710, 1709, 3294, 3333]

87.    Plaintiffs suffered general and special damages according to proof at trial. Plaintiffs pray for the return and redress of all damages including monies paid by relying on Named Defendants' promises, including expenses, interest, costs, out-of-pocket, and or benefit of the bargain damages including pain and suffering damages including medical damages and injuries including exacerbation of existing medical condition, and loss of rental business income and appreciation. Plaintiffs and each of them is entitled to recover a measure of damages for breach of an obligation not arising from the contract and all the detriment proximately caused thereby, whether it could have been anticipated or not by the misrepresentations. (Civ. Code § 3333, CC §3343 consequential damages) Plaintiff is also entitled to emotional distress damages for "all highly unpleasant mental reactions, such as fright, horror, grief, shame,

humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." (Slaughter v Legal Process 162 CA 3d 1236, 1252).

88.    Named Defendants are also jointly and severally liable for all causes of action alleged, including UCL and intentional infliction of emotional distress (and negligent/per se) for bad-faith outrageous conduct compounded by aggravating circumstances. Named Defendants waited over 15 years to renege on their promises and release the 2nd mortgage knowing full well that Plaintiffs faithfully paid the agreed first mortgage modification as applied for and granted under HAMP, creating a Malicious Debt Trap. Further Named Defendants knew or should have known that their conduct was causing extreme emotional distress and medical injuries. (Ragland v. U.S. Bank National Association 209 Cal. App. 4th 182, 204-05 (2012); Makreas v. First Nat'l Bank of N. Cal. 2013 WL 2436589 N.D. Cal. June 4, 2013); B&P 17,000, UCL, West v. JP Morgan Chase 214 Cal. App. 4th 780, 805 (2013); Foronda v WFB 2014 WL 6706815 at *10 (N.D. Ca. Nov. 26, 2014 UCL (unfair prong) unlawful practices violate Public Policy even if the practice is not technically prohibited; and or the practices are "immoral, unethical, [or] oppressive"  (NMS, HAMP, etc.))

89.    The aforementioned acts were carried out by the Named Defendants, including the creation and use of a 15-year Malicious Debt Trap, to enhance the economic benefits and profits for the Named Defendants, and each of them. Such bad acts were malicious, willful, and oppressive and done with the intent to injure and damage Plaintiff, and each of them, entitling Plaintiff to recover exemplary and punitive damages, under California Civil Code, section 3294. The officers, directors, and managerial and supervisory employees of the Named Defendants, and each of them, participated in unlawful conduct as alleged herein or had actual knowledge that the alleged conduct was unlawful and nevertheless authorized and/or ratified the practices with conscious disregard for the rights of Plaintiffs.

### THIRD CAUSE OF ACTION
Unfair Business Practices
(Business & Profession Code §§ 17200, 17500, 17082, *et seq*.);
Restitution; Disgorgement of Profits; False Advertising,
Treble Restitution; California Public Policy; California Code of Civil Procedure § 1021.5
Common Plan Scheme to Defraud & Pattern Violations
(Against All Named Defendants)

90.    Plaintiffs re-alleges and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

91.    California Business & Professions Code §17200 prohibits unfair competition to include "unlawful, unfair or fraudulent business practice(s)." Named Defendants and each of them including Prior Servicer and Current Servicer also **violated CC 2924.13 by "conduct [which] constitutes an unlawful practice"**, acted fraudulently, dishonestly, unlawfully, unfairly, unscrupulously, maliciously and illegally,

28
ORIGINAL COMPLAINT

and this conduct constituted unlawful business practices, in violation of CC 1709-1713 (Fraud) and as alleged. Only a lesser showing of fraudulent activity is required under UCL, which does not require proof of statutory or common law fraud. The unfair prong of the UCL makes unlawful practices that violate legislatively stated public policy. Allegations of HAMP 2MP or NMS violations such as dual tracking, (NMS_ IV B, A-17-20) or duty of care for an honest and competent process review (as defined therein) and after the grant of First Modification, and the resolution of the Second as promised and expected, to cancel, release, relinquish, and extinguish it (etc.), states a claim under UCL as an unfair business practice. (Foronda v. Wells Fargo 2014 WL 6706815 at *10 (N.D. Cal. Nov. 26, 2014) LENDER/SERVICER secretly sold or transferred ownership without proper notices or note assignment, concealed 2MP/NMS from Plaintiffs since 2023 to date, and acted in violation of CC 2924.13.

92.    Malicious Debt Traps; Common Plan & Scheme to Defraud: As alleged in this complaint, the business practices of Named Defendants constitute a common, plan, scheme and design to defraud Plaintiffs, and persons similarly situated, in part by orchestrating a subterfuge to lull Plaintiffs into a false sense of security by creating *15 years of concealment and silence leading Plaintiffs to believe that the Subject Second was extinguished.* Defendants and each of them have and continue to willfully engage in fraudulent business activities in violation of UCL, CC 1709-1713, and each cause of action as alleged.

93.    But For: Plaintiffs expended a significant amount of time, resources, and money to diligently fulfill their contractual obligations under the TPP and first HAMP modification Agreement. But for Named Defendants Malicious Debt Trap and its misrepresentations, omissions, and concealments, Plaintiff would not have entered into the TPP and First HAMP modification agreements. Plaintiff relied on Named Defendants, to his substantial detriment.

94.    Malicious Debt Trap Violations: Although malicious and likely to deceive, this court has maximum discretion to prohibit new schemes to defraud even if unfair and not deceptive. (Motors, Inc. v. Times Mirror Co. (1980) 102 Cal. App. 3d 735, 740); Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal. 4th 163, 180) Named Defendants made numerous false statements, omissions, and concealments to Plaintiff and government agencies including US Treasury.  Such violated other laws including California Insurance Code 533; California Financial Code 1339; false statements with the intent to defraud CPC 532(a). "Servicer shall not make inaccurate payment delinquency reports to credit reporting agencies when the borrower is making timely reduced payments…" (NMS, A-28, H 6, etc.)

95.    Public  Policy: Public policy is mandatory and designed to prevent and avoid surprises, unexpected zombie claims, and unlawful interest and fees in arrears by requiring *billing statements,*

*notices and reinstatement payoff* (NMS_ I-B-5, p. A-5-6; I-B-10-a, p. A-7) to keep borrowers informed on the status of the claimed debt, ownership, and servicer/ownership transfers, and whether the lender intends to write-off, extinguish, charge off or re-activate collection. Reg. Z 12 C.F.R. 1026.41, 41(e)(6)) The rule bars collection of interest and fees accrued after notice of charge off, and before notice of resumption or re-activation. 12 C.F.R. 1026.41(e)(6)(ii)(B). Named Defendants violate public policy, Rules and Mandates regulations, HAMP 2MP, NMS, and law.

96. Loss of Trust: Plaintiff and consumers likely may lose trust in the financial institutions and regulators due to the Named Defendants deceptive practices and the perceived failure of the California and US Government to protect them. CCFPL (Cal. Cons. Fin. Protection Law), CFPA (Cons. Fin. Prot. Act 2010) By the wrongful conduct as alleged, Named Defendants have intentionally interfered with Plaintiff's right to obtain an honest and competent review and evaluation of mandated government programs that afford Plaintiff protocol rights and benefits. Named Defendants failed to send Plaintiffs proper notice of servicing and debt ownership transfer and acted unlawfully with Unlawful Practice. (CC 2924.13, 12 CFR 1024.33) On 4/2023, the CFPB issued public policy that long dormant seconds are misleading to borrowers. (12 CFR PART 1006 Fair Debt Collection Practices Act (Reg. F)

97. Plaintiffs are entitled to restitution and redress of all mortgage payments paid, loss of property value, lost equity, physical and emotional injuries, pecuniary losses, loss of rental business income and appreciation, treble recovery, disgorgement of profits, irreparable injury, statutory damages interference with use and enjoyment of Plaintiffs home and retirement.  As such, no remedy at law is adequate to compensate for the injuries inflicted on the Plaintiff. Plaintiff demands attorney fees (C.C.P. § 1021.5, B&P 17082; CC §1780(e)), costs and related expenses to institute this action and to obtain a remedy hereunder. Named Defendants' conduct is malicious, extreme, outrageous, and is not tolerated in California. On information and belief, alleges that named Defendants have done and continue to do this to others. Enforcement of the debt/lien and unlawful interests and fees would be prejudicial to the public interest. (Ca. Civil. 1689(b)(6)) Plaintiff would be irreparably injured if enforcement of the Subject Second and or security were permitted to stand. (Ca. Civil. 1689(b)(7)) This action also serves a predominant *public purpose and public interest* under Code Civ. Proc. § 1021.5, and is a *significant benefit*, whether pecuniary or nonpecuniary, conferred on the general public.  Only a lesser showing of fraudulent activity is required under UCL, which does not require proof of statutory or common law fraud.

**FOURTH CAUSE OF ACTION**
Breach of Written Contract
(TPP, First Lien Hamp/NMS Modification; DOT; NOTE; HAMP 2MP)
(Against All Named Defendants)

98.    Plaintiffs re-alleges and incorporate by reference, where consistent or appropriate, all preceding allegations and paragraphs as though set out in length herein.

99.    Named Defendants including Prior Servicer, promised to process Plaintiffs for a complete first and second lien default solution in 2011. LENDER/SERVICER granted an enforceable Trial Period Plan ("TPP") and the first HAMP lien modification agreement, dated 12/22/2011, DOT, NOTE, and instead of granting the second lien modification within 60 days from the effective date in proportion to the granted first lien modification, it granted a second lien cancellation, extinguishment, release, and relinquishment. (NMS, SD 09-05 (Revised), NMS, 2MP/HAMP, p. 3, 4, 10-11, 18, 19) Plaintiff believed they applied for a HAMP/2MP solution on the MHA RMA HAMP/2MP application and expected to receive a Principal Reduction Program (HAMP 2MP) and or an extinguishment, as complete solution per the guidelines.  Named Defendants had a "**duty to do everything that the contract presupposes that [it would] do to accomplish its purpose.**" (Harm v. Frasher, 181 Cal. App. 2d 405, 417 (1960))

100.    Plaintiffs entered into a TPP and First Mod, performed to date, and believed he received a full extinguishments of the Subject Second as enunciated as public policy in HAMP 2MP/NMS, which it relied upon for over 15 years to date.  Named Defendants currently refuse to honor the same. A proprietary modification *"offered as a HAMP modification"* could be viewed as a HAMP offer according to HAMP solutions, process, and timelines (including extinguishment).  (Dominguez v. Nationstar Mortg., LLC, No. 37-2013-00077183 CU-OR-CTL (Cal. Super. Ct. San Diego Cnty. Sept. 19, 2014) The facts remain that Plaintiffs continue to faithfully pay their First Mod and rely upon the extinguishment of the Subject Second.

101.    Plaintiff also seeks relief and damages for breach of the Deed of Trust, and related Second Mortgage Debt Promissory Note as well as the TPP, FIRST MOD, and Second Mortgage extinguishment (mandated expectations and solution). [Deed of Trust; C.C.C. §§1550, 3300, 3304]

102.    Plaintiff entered into and fully and faithfully performed each agreement referenced above and all its duties, obligations, and expectations also under Subject Second. Plaintiff has direct privity with LENDER/SERVICER and its successors. (West v. JPMorgan Chase Bank, N.A., 214 Cal.App.4th 780; (2013); MHA Handbook v3.4, Sec. 1.4, p.20) Plaintiff (as borrower) obligates Servicers to honor and continue processing any grant to borrowers and *"designate that borrowers are party beneficiaries"* of contracts of transfer, sale, or claims between the Named Defendants, and as alleged herein. LENDER/SERVICER as NMS and MHA SPA signatory, entered into a servicing and or ownership transfer and or sale/claim agreement, and breached said agreement by failing to name Plaintiff as a third

party beneficiary (per SPA, NMS), and by failure to inform buyer of accurate status of the Subject Second and or by each acting in a common plan and scheme to defraud, and by failure to properly give notice to Plaintiffs (borrowers), and by failure to sign the mandated SPA agreements including the Assignment/Assumption agreement and Certification (Exhibit SPA - D), and by failure to honor the the extinguishment of the Subject Second (as transferor and transferees). Plaintiff is in privy and entitled to damages as alleged, for such violations supported all causes of action alleged herein, plus as expressly authorized by NMS, and or as enunciated otherwise by analogy. (CC 2924.12 (g), including attorney fees; (NMS; M1 b d p A-32; IV-M-1-a,p.A-32; IV-M-1-b,p.A-32;)

103.    Named Defendants breached and failed to honor the referenced agreements, promises, expectations (as also defined by HAMP 2MP; West v. JPMorgan Chase) and implied covenant of good faith and fair dealing, not to deny, violate, breach, or frustrate the rights and performance of Plaintiff including the Program purpose of reaching *'affordable payments"* on both the first and second liens LENDER/SERVICER failed to honor its cancellation promises and Rules and Mandates. Named Defendants and each of them refuses to release the Subject Second. (Malicious Debt Trap) Breach of contract claims are possible even outside the HAMP 2MP / NMS context, regardless of whether they were created by HAMP.

104.    MHA, HAMP 2MP and NMS impose standards and contractual expectations including a complete default solution of the first and second lien, in part as follows:

> *"In addition, HAMP guidelines **"informed the reasonable <u>expectations of the parties</u>** To [the Trial Plan Agreement]."* (Wigod, supra, at p. 565.)" (West at 780); *"... servicer, investor and any mortgage or other insurer <u>must relinquish, in whole or part, all rights and remedies against the borrower(s) related to the portion of the second lien obligation that is forgiven, ..."</u>* (Exhibit 1; HAMP SD 09-05 Revised, p.18, 19) (Emphasis Added)

105.    Plaintiff applied for a HAMP 2MP solution on the MHA Hamp 2MP RMA application form. Even if LENDER/SERVICER 15 years later claim they gave a non-HAMP/2MP solution, Plaintiff states a claim as Plaintiff is continuing to faithfully perform the First Mod. The Subject Second was cancelled / extinguished consistently with their belief and expectations, as enunciated in the NMS, and HAMP 2MP guidelines. Such claims are allowed outside of the HAMP 2MP context (*such as in-house or proprietary solutions*); (Hamidi v. Litton Loan Servs. LLP, No. 34-2010-00070476-CU-OR-GDS (Cal. Super. Ct. Sacramento Cnty. Oct. 10, 2013); even though HAMP 2MP and NMS define the mandatory process with the *HAMP 2MP and proprietary* process as the standard of care. (Menan v. U.S. Bank, Nat'l Ass'n, 924 F. Supp. 2d 1151, 1156-58 (E.D. Cal. 2013) (finding a "Forbearance to Modification Agreement" document an enforceable contract and that defendant breached the agreement by failing not honoring the NOC and releasing the lien; Lueras v. BAC Home Loan Servicing, LP, 221

Cal. App. 4th 49, 71-72 (2013) (finding an agreement under the HomeSaver Forbearance Program an enforceable contract *obligating servicer to consider borrower for foreclosure alternatives in "good faith," relying on the reasoning in West v. JP Morgan Chase Bank*, 214 Cal. App. 4th 780 (2013), which invokes the NMS and 2MP process).

106. Named Defendants, and each of them, are jointly and severally liable for damages and injuries as transferor and transferee servicers remain liable and burdened by NMS, MHA and HAMP 2MP standards, Rules and Mandates, and promises and expectations made to Plaintiff. But For: Plaintiffs would not have agreed to and entered into the TPP and the first modification had they known the second lien would not be resolved as represented, as canceled or released; or modified in proportion with the First Mod. (Comunale v. Traders & General Ins. Inc. (1958) 50 Cal. 2d 654, 658)

107. Named Defendants' conduct proximately caused damages and injuries to Plaintiff including but not limited to: compensatory damages, all detriment caused, expectation damages, mortgage payments made, lost value due to lien and loss of vendibility, consequential damages, loss of rental business income and appreciation, restoration damages, loss of use and enjoyment of the Subject Property and use and enjoyment of Plaintiffs retirement home and security, physical and emotional injuries, excessive interest, charges and fees, attorney fees, litigation costs, rescission, restitution, specific performance, etc. (Cal. Civ. Code 3300; Seeley v. Seymour, 190 Cal. App. 3d 844, 865 (1987))

### FIFTH CAUSE OF ACTION
Promissory Estoppel
(Against All Named Defendants)

108. Plaintiffs re-alleges and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

109. LENDER/SERVICER made a clear promise which Plaintiff reasonably and foreseeably relied upon, injuring Plaintiffs by such detrimental reliance. Garcia v. World Savings, FSB, 183 Cal.App.4th 1031, 1037 (S.D. 2010) LENDER/SERVICER promised benefits to Plaintiffs including to process Plaintiff for a complete first and second lien default solution and proper credit reporting as with express expectations enunciated in West v. JP Morgan Chase, and the Rules & Mandates. Plaintiff believed LENDER/SERVICER extinguished the Subject Second upon receipt of the LENDER/SERVICER FIRST MOD/BK Discharge, 15 Years of Silence, etc., and as represented by promises and expectations of its SPOCs and as expected by NMS, HAMP 2MP rules; all of which induced Plaintiff to forbear from taking any other action other than follow LENDER/SERVICERs instructions and make monthly payments on the TPP; and then the first HAMP MOD which he did to date. (Suppl. Dir. 09-05 (Revised) (2MP/HAMP, p. 3, 4, 10-11, 18, 19) LENDER/SERVICER reneged on its cancellation

promises some 15 years later. Also, LENDER/SERVICER also promised to process *all options*. (Cockrell v. Wells Fargo Bank, N.A., 2013 WL 3830048, at *4 (N.D. Cal. July 23, 2013) (finding a valid PE claim where servicer convinced borrower to go into default to qualify for a modification and promised to take no negative actions against borrower for doing so but then reported borrower to credit rating agencies).

110.    Plaintiff expended time and energy and did everything LENDER/SERVICER requested. The (false) promise of a (HAMP 2MP) complete default solution, prevented Plaintiff from pursuing other solutions and caused Plaintiff to forbear other remedies including legal action, refinance, market sale, (etc.), which constitutes a sufficient detriment. Named Defendants breached and failed to honor the referenced agreements, promises and expectations.

111.    Named Defendants created a 15 years Malicious Debt Trap and period of silence.  Named Defendants are estopped and has otherwise waived its rights to assert the defense of the statute of limitations ("SOL") as each caused the delay in litigation by creating a 10 year period of Malicious Laches and Malicious Silence, and Malicious Debt Trap as alleged. Courts have held that promissory estoppel claims in this context are exempt from the statute of frauds. Postlewaite v. Wells Fargo Bank, N.A. 2013 WL 2443257, at *4 (N.D. Cal. June)

112.    Injustice can only be avoided by enforcement of the promises. Plaintiff justifiably and detrimentally relied upon such promises and conduct, which is sufficient consideration to form binding agreements requiring Named Defendants to honor its promises. Turbeville v. Schmierer, (C.D. Cal. April 4, 2011), 2011 U.S. Distr. Lexis 42290) By reliance upon such promises, expectations and representations alleged, Plaintiff exposed himself to greater liability for loss home value from the lien, loan payments made, interest, principal, penalties, foreclosure costs and fees, attorney fees, litigation costs, and loss of benefits and appreciation profits of their home equity, and loss of his retirement security. Lucia v. Wells Fargo Bank (2011) WL 3134422, at 5 (N.D. Cal. 2010) Plaintiffs relied upon such representation to their detriment. Plaintiffs seek enforcement of the promises, redress for all compensatory (CC 3300) and consequential damages, loss of rental business income and appreciation, as alleged, including general, special, and punitive damages in amounts to be determined at trial. Named Defendants conduct was reckless in disregard of Plaintiffs rights, intentional, malicious, and callous, and against public policy and public interests.

### SIXTH CAUSE OF ACTION
Negligence (Per Se) California Supreme Court
(Against All Named Defendants)

113.    Plaintiffs re-alleges and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

114.    The elements of negligence are duty, breach of duty, proximate cause, and damages. (Ortega v. Kmart Corp. (2001) 25 Cal.4th 1200, 1205.) In determining whether a duty exist, the court should balance the following six non-exhaustive factors provided by the California Supreme Court in Biakanja v. Irving (1958) 49 Cal.2d 647: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm."

115.    Named Defendants actively participated in Unlawful Practices, and unfair, wrongful and fraudulent Malicious Debt Trap, and such conduct was outrageous and beyond the domain of the usual money lender or as allowed by the participating HAMP 2MP NMS servicer, giving rise to a duty owed to Plaintiff.  Ansanelli v. JP Morgan Chase Bank, N.A., 2011 WL 1134451 at *7 (N.D. Cal. M 28, 2011); (Osei v. Countrywide Home Loans (2010) 692 F. Supp.2d 1240, 1249; (West v. JPMorgan Chase Bank, N.A., 214 Cal.App.4th 780 (2013); (B&P §§ 17200, 17500, 17082, et. seq.) Defendants' active participation in the alleged wrongful conduct is sufficient to create a duty of care to Plaintiff to support a claim for negligence and negligence per se.  Named Defendants also had a duty to act honestly and competently, and not in reckless disregard of Plaintiffs rights and expectations.

116.    NMS, HAMP 2MP Mandatory Standard of Practice and Duty of Care: NMS, MHA and HAMP 2MP are the "standard industry practice for purposes of all Federal and State laws" (Section 129 of Emergency Economic Stabilization Act of 2008), **"usual and customary industry standards"** (NMS, HAMP/2MP SD 09-01 (April 6, 2009) 10-05 Revised)

117.    The supreme court case of Biakanja found a duty of care was owed borrower (Rossetta v. CitiMortgage, Inc., 18 Cal. App. 5th 628 (Cal. Ct. App. 2017), reh'g denied (Jan. 4, 2018)) In a thoughtful decision, the Third District Court of Appeal panel held that the trial court had erred in sustaining the demurrer to the plaintiff's negligence claim arising out of the loan modification process. Applying the Biakanja factors, the Court found that the servicer did owe a duty of care with respect to its handling of the borrower's loan modification application. The Court noted, "[W]e are convinced that a borrower and lender enter into a new phase of their relationship when they voluntarily undertake to renegotiate a loan, one in which the lender usually has greater bargaining power and fewer incentives to exercise care".

118.    Named Defendants breached their duties owed to Plaintiff and did these acts without permission, consent, or privilege, proximately causing injury and damages to Plaintiff. Named Defendants breached and failed to honor the referenced agreements, promises. LENDER/SERVICER

failed to honor its cancellation promises and Rule and Mandates. Demanding payment under threat of foreclosure from Plaintiff on a void and cancelled Subject Second is an Unlawful Practice (CC 2924.13). Named Defendants and each of them refuses to release the Subject Second. (Malicious Debt Trap)

119. Such violations of California law, NMS, HAMP 2MP, Rules and Mandates, and the causes of action alleged herein, are *per se negligence* which factually, legally and proximately caused damages and injuries to Plaintiffs. Defendants acted negligently, carelessly, recklessly, and unlawfully to harm and or destroy or lessen Plaintiff's rights and remedies and failed to take reasonable steps to discover and correct errors with respect to its promises, NMS, HAMP 2MP standards, and mandated complete default solutions. As a direct, legal, and proximate result, it was reasonably foreseeable that the Named Defendants conduct would result in injury and damage to Plaintiffs. Plaintiff is entitled to general, special, and punitive damages, including but not limited to: loss of equity by the value of the recorded Subject Second debt/lien, loss of vendibility of title, loss of consortium, loss of ability to refinance or sell home at market, loss of rental business income and appreciation, injuries for severe emotional distress, medical expenses, present and in the future, attorney fees and costs, in a sum to be shown according to proof.

### SEVENTH CAUSE OF ACTION
Slander, Disparagement & Impairment of Vendibility;
(Recording & Maintaining False or Void Statement; Wrongful
Enforcement of Void & Extinguished Sham Debt/Lien;
(Against All Named Defendants)

120. Plaintiffs re-alleges and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

121. Named Defendants recorded and maintained a false-in-fact void or sham lien affecting the vendibility of the Subject Property. Plaintiff alleges that Vendibility impairment includes the lessening of their ability and desire to refinance or sell their home at market due to the pending Lien.

122. Recording a document that makes a false claim to real property, including by recording or maintaining such false record (i.e.: the subject Lien, Deed of Trust, Note), may constitute publication of disparaging matter. Coley v. Hecker, 206 Cal. 22, 29 (1928). The slander of title invades an interest in the vendibility of property by reducing the value of property, making the property more difficult to sell or lease, or otherwise producing economic loss. Truck Ins. Exch. v. Bennett, 53 Cal. App. 4th 75, 90.

123. The Subject Second lien is unlawful or void because LENDER/SERVICER extinguished it in 2011. Some 15 years later, LENDER/SERVICER reneged on its promises and NMS, HAMP 2MP duties. Transferees of a HAMP burdened Subject Second failed to honor its cancelled status and made

demands for payment. Named Defendants refused to release the lien. Plaintiff in possession and control is the owner in fee of the Subject Property (personal residence). The parties' interests therein are contested and at odds. Named Defendants are claiming a legal or equitable right, title, stake, lien, or interest in the Subject Property described in this complaint, which is adverse to Plaintiffs' claimed right, title, and interest therein, and as such Named Defendants create and maintain a cloud, lien, and encumbrance on Plaintiffs' rights, title and interest to the Subject Property. Plaintiffs allege Slander of title as an unprivileged or malicious publication by Named Defendants of a false statement that disparages Plaintiff's title or ability to sell or refinance and causes pecuniary loss.

124.    Named Defendants are commercial entities conducting business in California, engaged in or as personal residence lenders, insurers, loss mitigation and mortgage servicers.

125.    Actual malice or ill will is unnecessary; implied malice is all that is required. Phillips v. Glazer, 94 Cal. App. 2d 673, 677 (1949). Evidence showing that the buyer recorded a document containing false accusations against the seller, while the buyer was in default, was sufficient to imply malice. (Lien) Contra Costa County Title Co. v. Waloff, 184 Cal. App. 2d 59, 67 (1960). Where defendants are guilty of all-pervasive fraud, it is not necessary to prove malice other than that which inhered in the plan and wrongful activity of the conspirators. Spencer v. Harmon Enters. Inc., 234 Cal. App. 2d 614, 625 (1965). As such, as a result of the demands and recorded LIEN, Plaintiff incurred pecuniary damages, loss of value of their home, impairment of ability to sell or refi at market, loss of time and inconvenience suffered in removing the lien and doubt of value on title, personal injuries and extreme emotional distress. Plaintiff seeks restitution, redress, Compensatory Damages, General Damages, Special Damages, loss of rental business income and appreciation, and amounts equivalent to punitive restitution for slander of title (CCC 3294 (a); Seeley v. Seymour, 190 Cal. App. 3d 844, 865 (1987); recovery of legal costs, expenses and attorney fees.

**EIGHTH CAUSE OF ACTION**
Violations of The Rosenthal Act / CCRAA
California Civil Code 1788-1788.3, CC § 1785.1 et seq., 1785.25.(a), 1785.31 et seq.
(Against Named Defendants)

126.    Plaintiffs re-alleges and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

127.    Named Defendants are debt collectors and servicers attempting to collect a debt, as defined by the California Rosenthal Fair Debt Collection Practices Act ("RFDCPA", "Rosenthal Act") according to California Civil Code § 1788.2(c). Named Defendants admit such status on its letterhead: [T]his communication is an attempt to collect a debt and any information obtained will be used for that purpose. The Subject Second is the claimed debt. As part of the common plan and scheme to defraud

Plaintiff as alleged and with unlawful credit reporting and aggressive and unlawful debt collection activity including: (1) by attempting to collect a barred and void debt without disclosing its unenforceability or voidness status after a "competent and reliable evidence" review (California Civil Code § 2924.17(a)-(b)) and expressly concealing, misrepresenting, and omitting the extinguishment of the Subject Second from Plaintiff including on the Debt Verification. (Young v. Midland Funding LLC (Cal. Ct. App. 2023, 83 Cal. App. 5th 243, 10/22 pub. 2023); as a *deceptive practice affirming strict liability*; continuing to date and ignoring requests in Plaintiff's original complaint filed in this court; (2) by LENDER/SERVICER failing to *update* the credit reports to reflect the settled debt status of the FIRST MOD, and or Subject Second properly, also violating CCRAA's (CC 1785.25) **accuracy requirements**, including to report per LENDER/SERVICER policy and custom and practice, reported as 'paid in full and closed', contrary to the actual negative and 'suspended' reporting, continuing to date and ignoring requests in Plaintiff's original complaint filed in this court and as part of the Malicious Debt Trap as represented to Plaintiffs that it would adjust and correct the credit reporting (Hernandez v. Portfolio Recovery Associates, LLC (C.D. Cal. 2023 U.S. Dist. LEXIS 145678; 8/15/23; CC 1785.25(a)); (3) by acting in a common plan and scheme to defraud Plaintiffs before and after the *servicing transfer* (Davidson v. Seterus, Inc. – Follow-Up Litigation (Cal. Super. Ct., Los Angeles County, 2024; M 2024, awarding damages against original lenders, debt collectors and servicers under CCRAA and Rosenthal (CC 1788.30); (4) by LENDER/SERVICER failing to remove disputed credit report items as alleged, and LENDER/SERVICER for inaction and failure to investigate disputes and credit inaccuracies including the wrongful reporting of the Subject Second, before and during collection efforts to discover the cancelled debt and disputed status (Nguyen v. Experian Information Solutions, Inc. (C.D. Cal. 2024 U.S. Dist. LEXIS 98765, 6/3/24; CCRAA 1785.16 duty to investigate and 1785.25 accuracy requirements); (5) by sending *false and misleading debt verifications* with unclear or improper dispute notices, in part by *concealing and omitting the LENDER/SERVICER cancellation document from the its Debt Verification reply to Plaintiffs*; FTC Letter Ruling M 19, 2008, etc., NMS A, B, D), misleading Plaintiffs and the average member of the public (CC 1788.17 incorp. FDCPA 1692(g); Ramirez v. Midland Credit Management, Inc. (Cal. Ct. App. 2024 WL 4567123, 10/29/2024)); (6) by aggressive collection without debt validation including as required by mortgage servicers, debt owners and debt collectors; (Gonzalez v. Wells Fargo Bank, N.A. (Cal. Super. Ct., San Francisco County, Case No. CGC-25-612345, 2/14/2025); and (7) by LENDER/SERVICER, failing to update credit reports with correction and adjustment to false or inaccurate reportings to reflect the correct cancellation or dispute of the negative information of the (claimed) settled debt or consistent with Plaintiffs requests and claims

in this complaint filed per CCRAA (CC 1785.25(a); Patel v. TransUnion LLC (C.D. Cal. 2025 U.S. Dist. LEXIS 23456) 3/10/2025).

128.    The Subject Second lien is unlawful or void because LENDER/SERVICER cancelled it in 2011. Some 15 years later, in 2025 and 2026 LENDER/SERVICER reneged on its promises and NMS, HAMP 2MP duties. Named Defendants as transferee of the SPA agreement and its NMS, HAMP 2MP obligations burdened SERVICER to honor the Subject Second cancelled status but it failed to do so and made demands for payment. Named Defendants refused to release the lien.

129.    Named Defendants made demands to Plaintiff for payment under the threat of foreclosure of the Subject Second, and unlawful and excessive interests and fees; in the face of the implied threat of foreclosure. Public policy is designed to prevent and avoid surprises, unexpected zombie claims, and unlawful interest and fees in arrears by requiring *billing statements*, notices and reinstatement payoff (NMS_ I-B-5, p. A-5-6; I-B-10-a, p. A-7) to keep borrowers informed which Named Defendants failed to do. NMS, Reg. Z 12 C.F.R. 1026.41, 41(e)(6)) The rule bars collection of interest and fees accrued after notice of written off or charged off debt, and before notice of resumption or re-activation. (NMS, 12 C.F.R. 1026.41(e)(6)(ii)(B). Plaintiffs disputed said demand. Named Defendants actively participated in unfair and wrongful collection activities beyond the domain of the usual money lender by concealing this debt for some 15 years after LENDER/SERVICER represented that the debt was cancelled, causing accrual of interest, fees, penalties, the recordation of the LIEN and maintenance of the LIEN as a threat and derogatory record. False statements are prohibited by RFDCPA.  Defendants, as participating NMS, HAMP servicers or transferee, must comply with all Rules and Mandates state, federal, and local laws. This includes the RFDCPA.

130.    RFDCPA Wrongful Threats: Named Defendants acted in a common plan and scheme, pattern and practice to unlawfully, intentionally, willfully, and knowingly, in part, threaten payment collection on a void or cancelled debt and lien (Subject Second) with inflated unlawful amounts at times when they had no right to do so and failed to mail statements and status and other notices as mandated. (10 Year Malicious Debt Trap) Named Defendants failed to act in a manner that complies with fairness, honesty, and due regard for the rights of others required by the Rosenthal Fair Debt Collection Practices Act [Civil Code § 1788.1(a)(2)] (and also as imputed remedies from the Fair Debt Collection Practices Act ("FDCPA"), and for each inaccurate or failed credit (monthly) reporting violation CCRAA. Named Defendants willfully and knowingly violated its statutory duties under the California Fair Debt Collection Act and CCRAA, and acted unfairly or deceptively. Plaintiffs are entitled to the remedies under CA CC § 1788 et seq. and CCRAA, for all violations whether negligent or willful.

131.   <u>Credit Reporting Violations</u>: Named Defendants "…assumed a vital role…" (CC 1785.1(b)) to "…exercise their grave responsibilities with fairness, impartiality and a respect…" (CC 1785.1(c)) and act "…in a manner which is fair and equitable to the consume, …with accuracy…" (CC 17851.1 (d)). Additionally, as part of the common plan and scheme to defraud Plaintiffs and others similarly situated, Named Defendants created a 10-year Malicious Debt Trap, and period of silence to defraud Plaintiffs with a false cancellation of the Subject Second.

132.   Plaintiffs discovered such credit reporting violations on 2026.

133.   As such, Plaintiff is also entitled to Actual, Statutory, Punitive, Attorney fees, Treble Damages, and Emotional Distress damages and injuries plus litigation costs, interest, loss of value and equity appreciation of property due to the wrongful Subject Second (lien), loss of use and enjoyment of home, loss of opportunities, loss of rental business income and appreciation, extreme emotional distress causing physical injuries, loss of consortium, failure of proper positive credit reporting, and exacerbation of medical condition, for each bad act or violation, over the approximate 10-year Malicious Debt Trap period continuing to date, etc. Plaintiffs are entitled to the remedies under each cause of action as part of the common plan and scheme, including the CC § 1788 et seq. and CC § 1785.1, 1785.3 et seq., for all violations, whether negligent or willful.

## NINTH CAUSE OF ACTION
Negligent Infliction of Emotional Distress
(Against All Named Defendants)

134.   Plaintiffs re-alleges and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

135.   Plaintiffs are victims of a stress-induced Malicious Debt Trap by Named Defendants, who were in a unique position of control and power over Plaintiffs. As alleged throughout this complaint, the Plaintiffs were in direct contact with LENDER/SERVICER. Named Defendants had a duty to act honestly and competently and not to act recklessly in disregard of Plaintiffs health and safety, and to avoid foreseeable bad conduct it knew or should have known would cause harm and severe mental stress and or physical injuries to Plaintiffs.  Such conduct is outrageous, deliberate, unreasonable, and done in violation of law and public policy.

136.   Named Defendants had direct knowledge that its conduct was causing Plaintiff severe emotional and physical stress. Plaintiff suffers from nightmares, upset stomach, anxiety and is fearful. Such uncertainty precludes him from selling or refinancing his home to build rental income and real estate equity and retirement appreciation. Plaintiff suffers from severe emotional distress with physical manifestations. Plaintiff suffers from embarrassment, anguish, fright, horror, nervousness, grief, anger,

anxiety, shock, fear, shame, grief, humiliation, worry, nausea, upset stomachs, and or medical problems and or exacerbated medical conditions.

137.    As a direct and proximate result of the outrageous, intentional, reckless, malicious, harmful, impermissible, unreasonable, severe, pervasive and deceptive conduct of the Named Defendants. This bad conduct is a substantial factor in causing such injuries. Named Defendants are jointly and severally liable for the emotional distress and personal injuries suffered by Plaintiffs. Plaintiffs are entitled to compensatory damages (CC 3333), general, special, and punitive damages, for past, present, and future medical, surgical, psychiatric, medication expenses, long-term care costs and expenses, loss of capacity, lost income, pain and suffering, loss of consortium, loss of equity, loss of appreciation equity, loss of rental business income and appreciation, and loss of peace of mind and retirement enjoyment. *"Non-intentional conduct comes within the definition of malicious ..."* (Ford Motor v. Home Ins. (1981) 116 Cal.App.3d 374)

## TENTH CAUSE OF ACTION

Alternatively: Specific Performance
(Command Compliance & Complete Cancellation/2MP/Release, Relinquishment)
(Against Named Defendants)

138.    Plaintiff incorporates by reference each and every allegation and paragraph above as if repeated verbatim, and all paragraphs of all preceding causes of action, if any, as if the same were fully set forth herein, and not contradictory to Plaintiff.

139.    Plaintiffs and LENDER/SERVICER entered into an enforceable (NMS) HAMP 2MP TPP and permanent first lien modification with promises and expectations of a complete default solution including the modification of the Subject Second or the cancellation of same, as promised, imposed and mandated by Rules and Mandates and public policy. LENDER/SERVICER elected to cancel the Subject Second (Prior Servicer). Such bargains, expectations, representations and agreements as expressly agreed, and imposed by law, were just and reasonable with the specific expectations of cancellation of the Subject Second. (Rules and Mandates; SD 09-05 (Revised); NMS, 2MP/HAMP, p. 3, 4, 10-11, 18, 19) accepted transfer of the Subject Second and currently hold such ownership and control.

140.    Complete *affordability* is the public policy behind these mortgage default solutions, which includes a first and second mortgage solution. LENDER/SERVICER promised to do so, and contracted to do so, but reneged 15 years later. Money damages are inadequate. Plaintiff has fully performed all conditions, covenants, and promises required of them under the alleged.  The Plaintiffs home is unique in California. This referenced agreement is unique and therefore Plaintiffs may have no other adequate remedy at law. Accordingly, in the alternative, Plaintiff is entitled to specific

41
ORIGINAL COMPLAINT

performance mandating compliance with the agreement, and NMS, HAMP 2MP, to wit: completing the cancellation of the Subject Second. (Palo Alto-Menlo Park Yellow Cab v Santa Clara County Transit, 65 Cal. App. 3d 121,132-33, Witkin, Sum. Equity, Sect. 21 (9th ed. 1990) Plaintiff is entitled to a declaration that the debt is void and or that the lien is void and released; thus cancelled and extinguished, and a declaration of immediate correction of the public record affecting its home with the release and or stripping of said trust deed and lien. Plaintiffs are also entitled to compensatory damages, loss of rental business income and appreciation, and costs to enforce said promises including expert costs, attorney fees, and costs and other damages and restitution to be proven to the court.

### ELEVENTH CAUSE OF ACTION
Declaratory Judgment CCP § 1060
Quiet Title [Code Civ. Proc. §§760.010-764.080];
(Wrongful Enforcement of Void & Sham Debt/Lien
(Against All Named Defendants)

141.    Plaintiffs re-alleges and incorporate by reference where consistent or appropriate all preceding allegations and paragraphs as though set out in length herein.

142.    Plaintiff seeks declaratory judgment under CCP § 1060. An actual controversy exists related to the parties' legal rights, duties and obligations, as Named Defendants recorded and maintain a lien securing the Subject Second on the Subject Property (23250 Crocus Ct. Corona, CA 92883 [APN: 282-272-013], and continue to demand payment with interest, and threaten foreclosure. Plaintiffs allege that the lien is false-in-fact void and a sham as the secured debt was cancelled, written off, charged off, and or extinguished by LENDER/SERVICER in 2011. Servicer seeks to collect on the claimed debt that was cancelled. Named Defendants failed to mail or disclose required notices, program options, lender account billing statements of status and amounts paid or unpaid or due and report the credit status of the Subject Second for such 15-year concealment period in violation of Rules and Mandates. (Malicious Debt Trap) (CC 2924.13) On information and belief, this controversy goes well beyond merely a dispute between the parties, as it is a question of public policy and public interest, as the lenders and assignee debt collectors have created many such long-dormant and time-barred second mortgages.  The deed of trust is a contract between Plaintiffs and LENDER/SERVICER. There is no consensual lien to record and enforce, as the Subject Second debt was cancelled, charged-off and extinguished under facts, law, and NMS, HAMP (2MP). The debt is void at law and in fact, and or equitably barred from enforcement.

143.    Plaintiff has been unfairly prejudiced by the recording and maintenance of the subject debt and lien and threat of foreclosure. There is no valid debt to secure with the recorded lien.  The lien must be quashed, released, and vacated. The loan should be declared void. The declaration should declare that Named Defendants have no right to collection or foreclosure, as the debt and lien are void by

extinguishment under Rules and Mandates and as promised by LENDER/SERVICER. Alternatively, the Subject Second NMS, HAMP (2MP) modification should be issued, and the lien declared void, and or cancelled as void as promised in writing by LENDER/SERVICER.

144. Plaintiff is entitled to a declaration that the Subject Second is void, released, relinquished, cancelled, extinguished, vacated from public record, and or stripped or unsecured. Plaintiff is also entitled to compensatory damages, and costs to enforce said promises including expert costs, attorney fees, and costs and other damages and restitution to be proven to the court. As an alternative or additional remedy, Plaintiff may seek declaratory or injunctive relief, and or elect to rescind the TPP and or the First Lien Modification and or the Subject Second loan contract with LENDER/SERVICER, rendering the recorded debt and or security instruments including the recorded security and Lien void, as enforcement would be prejudicial to the public interest. (Ca. Civil. 1689(b)(6)) Plaintiffs' interests, public policy, and the public interest are irreparably injured if enforcement and the Subject Second and its debt and or security were permitted to stand. (Ca. Civil. 1689(b)(7)) California rescission also voids a lender's security interest in the collateral home for failed notices and disclosures.

145. Quiet Title: Plaintiff and Named Defendants have an actual controversy as both claim title to the Subject Property identified above. An action to quiet title is an action to establish one's title against adverse claims to real or personal property or any interest therein. California Civil Procedure Code § 760.020(a) (b). Plaintiff alleges California Code of Civil Procedure §761.020 (c): The adverse claims to the title of the plaintiff against which a determination is sought." Named Defendants seek foreclosure of Plaintiff's Subject Property (unique personal residence home). Plaintiff is the owner in fee and is in possession and control of Subject real property home and its improvements located at common address alleged above. Plaintiff alleges California Code of Civil Procedure §761.020 (e): A prayer for the determination of the title of the plaintiff against the adverse claims."

146. Plaintiff prays for declarations in his favor with cancellation of Second (DOT, Lien, Note), return of all money paid Named Defendants, loss of rental business income and appreciation, attorney fees, costs, and such other relief as deemed appropriate.

147. **VERIFICATION OF QUIET TITLE:**

380 Lado De Loma Drive, Vista, CA 92083 [APN: 179-093-24]

I, **KARL JUSTIN KEENER**, the plaintiff in this action verifies this Quiet Title cause of action. I have read the complaint and it is true of my own knowledge, except as to those matters stated on information or belief and, as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at San Diego County, California, on 3/23/26

_____

**KARL JUSTIN KEENER**

44

ORIGINAL COMPLAINT

**PRAYER**

WHEREFORE, the Plaintiffs having set forth their claims for relief against the Named Defendants as part of a common plan and scheme with joint and several liability, respectfully pray as follows:

1. For general, special and actual damages including compensatory damages, according to proof;

2. For consequential and incidental damages and medical damages according to proof;

3. For restitution and treble losses and money or value lost; For exemplary and punitive damages in an amount determined by the Court to be reasonable as authorized by section 3294 of the California Civil Code; For pre-judgment and post-judgment interest at the maximum legal rate;

4. For costs, expert fees and attorneys' fees (Hadley v Baxendale); For Statutory Damages and Fees and Costs; including Rosenthal and CCRAA including CC § 1788 et seq. and CC § 1785.1 et seq., 1785.31 et seq., for all violations whether negligent or willful, violations including claims for breach of contract for transfer breaches per 2MP/NMS (damages provisions), Breach of Contract alternatives for specific performance, supporting remedies under CC 2924.12(g);

5. For Specific Performance, Injunctive Relief, Unjust Enrichment; For Declaratory Relief; Quiet Title [Code Civ. Proc. §§760.010-764.080] determination that the foreclosure documents are an Unlawful Practice, or otherwise void and null, and the Plaintiff is entitled to clear title; Nullification/Release of Subject Second Lien; Alternatively, to elect to rescind TPP and or First Hamp (NMS) Modification, Subject Second Loan rendering it void and against public interest; CC §1689(b)(6); For compliance with Public Policy; CC §1689(b)(7); For additional relief under CCP §1021.5. Relief for CC 2924.13 violations, 2MP/NMS violations supporting each cause of action; including Release of Lien, Relinquishment of all rights against the Borrower, including actual damages, including loss rental income and equity.

6. For all such other and further relief as the Court deems just and proper, not limited to damages and restitution as alleged and to be proven at trial according to proof.

Respectfully Submitted,

Dated: 3/23/26

By:_____

Attorney for Plaintiffs

45
ORIGINAL COMPLAINT

## PLAINTIFFS DEMAND JURY TRIAL

Plaintiffs hereby demand trial by jury for all claims so triable.

Respectfully Submitted,

Dated:  3/23/26

By: _____

EXHIBITS

**EXHIBITS**

Exhibit 1 - 1099-C (Notice of Cancellation of Debt) (CC 2924.13 Violation)

Exhibit 2 – California AG Bonta (AB 130 – CC 2924.13 is Retroactive in pending case)

Exhibit 3 - First Hamp Modification – Triggering HAMP 2MP/NMS Rights and Benefits

Exhibit 4 – FTC Advisory Dual Capacity Conflict UCL

Exhibit 5 – CC 2924.13 (AB 130) California Law

Exhibit 1 - 1099-C (Notice of Cancellation of Debt) (CC 2924.13 Violation)

CORRECTED (if checked)

CREDITOR'S name, street address, city, state, ZIP code, and telephone no.

SAXON MORTGAGE SERVICES, INC
P.O. BOX 163405
FORT WORTH, TX  76161-3405

CUSTOMER SERVICE: (800) 594-8422

OMB No. 1545-1424

2011

Form 1099-C

Cancellation of Debt

| | |
|---|---|
| **1** Date canceled  03-25-11 | **2** Amount of debt canceled  $ 97,385.58 |

**Copy B**
**For Debtor**

DEBTOR'S name, street address (including apt. no.), city, state, and ZIP code

6-660-71211-0001114-001-1-000-000-000-000

KARL J KEENER
380 LADO DE LOMA DR
VISTA CA  92083-5951

**3** Interest if included in box 2

$    2,257.60

**4** Debt description
380 LADO DE LOMA DR
VISTA CA 92083

**5** If checked, the debtor was personally liable for repayment of the debt . . . . . . . . ▶ [X]

**6** Bankruptcy (if checked) [ ]

**7** Fair market value of property
$  194,142.00

CREDITOR'S federal identification number
75-1071561

DEBTOR'S identification number
***-**-███

Account number (see instructions)
2000284281

This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if taxable income results from this transaction and the IRS determines that it has not been reported.

Form **1099-C**

(Keep for your records)

Department of the Treasury - Internal Revenue Service

## Instructions for Debtor

If a federal government agency, certain agencies connected with the Federal Government, financial institution, credit union, or an organization having a significant trade or business of lending money (such as a finance or credit card company) cancels or forgives a debt you owe of $600 or more, this form must be provided to you. Generally, if you are an individual, you must include all canceled amounts, even if less than $600, on the "Other income" line of Form 1040. If you are a corporation, partnership, or other entity, report the canceled debt on your tax return. See the tax return instructions.

However, some canceled debts are not includible, or fully includible, in your income, such as certain student loans, certain debts reduced by the seller after purchase, qualified farm debt, qualified real property business debt, qualified principal residence debt, or debts canceled in bankruptcy. See Pub. 4681. Do not report a canceled debt as income if you did not deduct it but would have been able to do so on your tax return if you had paid it. Also, do not include canceled debts in your income to the extent you were insolvent immediately before the cancellation of the debt. If you exclude a canceled debt from your income, file Form 982.

**Account number.**  May show an account or other unique number the creditor assigned to distinguish your account.

**Box 1.** Shows the date the debt was canceled.

**Box 2.** Shows the amount of debt canceled. **Note:** If you do not agree with this amount, contact your creditor.

**Box 3.** Shows interest if included in the canceled debt in box 2. See Pub. 4681 to see if you must include the interest in gross income.

**Box 4.** Shows a description of the debt. If box 7 is completed, box 4 shows a description of the property.

**Box 5.** Shows whether you were personally liable for repayment of the debt when the debt was created or, if modified, at the time of the last modification. See Pub. 4681 for reporting instructions.

**Box 6.** If the box is marked, the creditor has indicated the debt was canceled in a bankruptcy proceeding.

**Box 7.** If, in the same calendar year, a foreclosure or abandonment of property occurred in connection with the cancellation of the debt, the fair market value (FMV) of the property will be shown, or you will receive a separate Form 1099-A. Generally, the gross foreclosure bid price is considered to be the FMV. For an abandonment or voluntary conveyance in lieu of foreclosure, the FMV is generally the appraised value of the property. You may have income or loss because of the acquisition or abandonment. See Pub. 4681 for information about foreclosures and abandonments. If the property was your main home, see Pub. 523 to figure any taxable gain or ordinary income.

The Mortgage Forgiveness Debt Relief Act of 2007 was enacted into law in December 2007. If you have any questions regarding your eligibility, please consult your tax advisor.

Exhibit 2 California AG Bonta (AB 130 – CC 2924.13 is Retroactive in pending case)

4

PLAINTIFF'S EXHIBITS ATTACHED TO COMPLAINT

C A L I F O R N I A

**DEPARTMENT** OF **JUSTICE**

*Rob Bonta*
*Attorney General*

March 5, 2026

RE:    *Cal. Mortgage Ass'n, et al. v. Bonta*, <u>Case No. 2:25-cv-02614-DAD-CKD</u>

Dear Judge Drozd:

Defendant Rob Bonta, in his official capacity as the Attorney General of California, submits this letter brief addressing certain topics discussed at the February 19, 2026 hearing.

## I.    THE LEGISLATURE INTENDED SECTION 2924.13 TO BE GIVEN RETROACTIVE EFFECT.

Although statutes are generally presumed to apply only prospectively, "this presumption is rebuttable," *Preston v. State Board of Equalization*, 25 Cal. 4th 197, 222 (2001); indeed, "this presumption is a canon of statutory interpretation rather than a constitutional mandate." *People v. Frahs*, 9 Cal. 5th 618, 627 (2020). California's Legislature can enact laws that apply retroactively "by implication." *Id*. at 627. For example, *Frahs* concerned one type of statute—ameliorative criminal laws—where courts often decide laws are retroactive, even without express legislative statements, particularly when there is "no clear contraindication of legislative intent." *Id.* at 630. But courts look to legislative intent to determine a statute's retroactivity in other contexts as well. *See*, *e.g.*, *In re Marriage of Bouquet*, 16 Cal. 3d 583 (1976) (amendment to statute providing that earnings of both spouses while they live apart constitute separate property was intended to be retroactive). While *Marriage of Bouquet* has been disapproved of in several subsequent cases (*see Evangelatos v. Superior Ct.*, 44 Cal. 3d 1188 (1988) and *Californians for Disability Rts. V. Mervyn's, LLC*, 39 Cal. 4th 223 (2006)), it has also been cited approvingly. *See Preston*, 25 Cal. 4th at 221-222; *see also McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 248 (2021) (conc.) (quoting *Preston* for importance of looking to legislative history and extrinsic sources to determine whether statute is retroactive). And, a majority opinion of the California Supreme Court has recently confirmed: "The retroactivity presumption is not a straightjacket." *McHugh*, 12 Cal. 5th at 235 (cleaned up). In that case, the Court avowed, whether taking a general or more narrow view of the definition of retroactivity, "[u]nder either, we decline to give the presumption such weight that it determines the outcome of this case." *Id.*

So too, here. In determining whether Section 2924.13 should be given retroactive effect, this Court should look to the same factors that it does whenever it must determine the Legislature's intent to effectuate the law's purpose, including the statute's purpose, legislative history, and public policy. *See Sierra Club v. Superior Ct.*, 57 Cal. 4th 157, 166 (2013); *see also Preston*, 25 Cal. 4th at 222 (relying on statements in the legislative history regarding the statute's purpose to conclude that the legislature intended it to be retroactive). Section 2924.13's legislative history and purpose demonstrate that the Legislature intended retroactive application with respect to the unlawful practices in subdivision (b). The Legislature specifically called out certain zombie mortgages that were originated prior to the 2008 financial crisis and declared its intent to protect borrowers from such mortgages. Dkt. No. 20-2 at 20.  It noted that many borrowers of these mortgages faced years of noncommunication or were told that their loans were forgiven as part of a loan modification during the financial crisis, years or even decades ago. *Id.* If these backwards-looking predatory practices could not be deemed "unlawful" because they occurred prior to the statute's enactment, the borrowers that the Legislature specifically identified would be essentially entirely unprotected from such practices. Interpreting the statute in this way would violate the "most fundamental rule of construction, namely that a statute must

Page 2

be interpreted so as to effectuate legislative intent." *Russell v. Superior Ct.*, 185 Cal. App. 3d 810, 818 (Ct. App. 1986) (cleaned up); *see also Bank of Am. v. Angel View Crippled Children's Found.*, 72 Cal. App. 4th 451, 458 (Ct. App. 1999*)* (noting that "the remedial nature of the statute, and the 'evils to be remedied,' can be taken into account when reviewing a statute for an implied retroactive intent," and finding that the protective purpose of the challenged statute made it "eminently reasonable to conclude the Legislature would intend to apply its remedy" retroactively).[1]

## II.    *EX PARTE YOUNG* DOES NOT APPLY.

The Attorney General's ability to prosecute perjury charges does not provide sufficient enforcement authority under *Ex parte Young* for the reasons explained in Defendant's briefing. Dkt. No. 28 at 4. That the Ninth Circuit cited to *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021 (6th Cir. 2022) ("*ULCM*") in *Matsumoto* does not change this analysis.[2] *See Matsumoto v. Labrador*, 122 F.4th 787, 803 (9th Cir. 2024). *Matsumoto* involved a criminal statute that granted the Idaho attorney general the authority to prosecute violations if the local prosecuting attorney refused to do so. *Id.* The Ninth Circuit cited to *ULCM* when noting that this direct grant of enforcement authority "clear[ed] the low bar set by [its] sister circuits' interpretations of *Ex parte Young.*" *Id.* It did not hold that these "low bars" in other circuits were identical to the bar by which the Ninth Circuit operates. *Id.* Moreover, the parenthetical in the *ULCM* citation merely stated the general principle that "direct criminal enforcement authority is not necessary for *Ex parte Young* to apply." *Id.* The Ninth Circuit did not endorse the underlying holding of *ULCM* or discuss its specific fact pattern.

Regardless, *UCLM* is easily distinguishable from the present case. First, the attestation requirement in *UCLM* was central to the main purpose of the challenged statute in a way that the perjury component of Section 2924.13 is not. The statutory scheme in *ULCM* provided that: (1) marriage licenses must include a certificate in which the minister attests that they "solemnize[d] the rite of matrimony"; (2) individuals who are ordained online cannot "solemnize" marriages; and (3) making a false statement on a marriage license is a crime punishable under Tenn. Code § 39-16-504. *ULCM,* 35 F.4th at 1028. Thus, any time a minister who was ordained online purported to solemnize a marriage, they *necessarily* committed a crime and were subject to prosecution. In contrast, servicers can violate every material provision of Section 2924.13 without running afoul of California's perjury statutes. *See* Dkt. No. 28 at 4. Second, prosecution by government officials was the *only* method of enforcing the statute challenged in *ULCM. ULCM,* 35 F.4th at 1028. But Section 2924.13 is primarily privately

---

[1] Plaintiffs make the extraordinary claim that the statute is retroactive if applied to any mortgage that *originated* prior to the passage of the statute. Not so. Imposing forward-looking obligations (such as a certification requirement) that might impact contracts executed prior to a statute's enactment does not make the law retroactive. A law is only retroactive if it attaches new legal consequences to *past* conduct (for example, if conduct that occurred prior to enactment is deemed an "unlawful" practice that may provide protections to borrowers under Section 2924.13). *See Polone v. C.I.R.*, 505 F.3d 966, 972 (9th Cir. 2007) (a statute is not retroactive merely because it "is applied in a case arising from conduct antedating the statute's enactment," or because it "upsets expectations based in prior law"). For forward-looking obligations, a regular Contracts Clause analysis applies to determine if there is substantial impairment of pre-existing contracts.

[2] *UCLM* involved a challenge to a Tennessee statute that aimed to make ministers who received online ordinations incapable of solemnizing marriages. *Id.* at 1025. The court found that the district attorneys general had sufficient enforcement authority by virtue of their duty to prosecute false statements made by ministers in marriage licenses. *Id.* at 1041.

Case 3:26-cv-03672-CAB-VET    Document 1-3    Filed 06/23/26    PageID.68    Page 55 of 76
Case 2:25-cv-02614-DAD-CKD    Document 50    Filed 03/05/26    Page 3 of 4

Page 3

enforced by borrowers. § 2924.13(c)(2)(A), (d), (f), (g). <u>Third</u>, the enforcement authority of the Attorney General with respect to the perjury statutes is more attenuated than the enforcement authority of the district attorneys general in *ULCM.* Before prosecuting criminal violations, either the Attorney General must determine that the law is "not being adequately enforced" or the Governor must instruct the Attorney General to prosecute such violations. Cal. Const. Art. 5, § 13; Cal. Gov. Code § 12550. In contrast, Tennessee law vests district attorneys general with the "direct authority (and even duty)" to prosecute "false statements made on marriage licenses." *ULCM,* 35 F.4th at 1040.

## III.    PLAINTIFFS LACK ARTICLE III STANDING.

Under Supreme Court precedent, Plaintiffs can *at most* obtain an injunction against the Attorney General himself. *See Whole Woman's Health v. Jackson*, 595 U.S. 30, 43-44 (2021). Plaintiffs lack Article III standing when the requested injunction would not redress their claimed harms. *See, e.g., California v. Texas*, 593 U.S. 659, 670 (2021) (plaintiffs lacked standing to obtain injunctive relief against government officials because they "have not shown that any kind of Government action or conduct has caused or will cause the injury they attribute to [the challenged law]"). Here, Plaintiffs' alleged injuries arise not from any action taken by the Attorney General, but from the mere existence of Section 2924.13 and the possibility that borrowers may privately enforce the statute. [3] An injunction against the Attorney General will not redress Plaintiffs' harms; they therefore lack standing.

Multiple courts have applied these longstanding principles to conclude that plaintiffs lack standing when they sue an official whose hypothetical enforcement of the challenged statute is not the cause of plaintiffs' alleged injuries. For example, the Second Circuit recently held that plaintiffs lacked standing to challenge a city ordinance—which provided for enforcement by private parties—via a lawsuit against the city. *Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*, 118 F.4th 505, 523 (2d Cir. 2024). The court noted that "a judgment declaring the Guaranty Law unconstitutional could run only against the City," and "a declaratory judgment against the City could afford plaintiffs no relief from the injuries they claim flow from its enactment, *i.e.*, the defenses and/or penalties afforded *private parties*." *Id.* (emphasis in original). Here, too, a judgement in favor of Plaintiffs could run only against the Attorney General, and it would not redress Plaintiffs' claimed injuries, which all arise from "the defenses and/or penalties afforded *private parties*." *Id.*; *see also D'Souza v. Guerrero*, No. 24-2537, 2025 WL 636706, at * 2 (9th Cir. Feb. 27, 2025) (where the requested relief would either be "contrary to . . . *Whole Woman's Health*" or else "not redress [plaintiffs'] alleged grievances," plaintiffs lacked Article III standing); *Ortiz v. Foxx*, 596 F. Supp. 3d 1100, 1107 (N.D. Ill. 2022) (plaintiffs lacked standing to proceed against the State's Attorney because they "[could not show] that an injunction against the State's Attorney would redress their injuries"); *Uber Techs., Inc. v. Moss*, No. 1:25-CV-00096-DDD-KAS, 2025 WL 1420940, at *3 (D. Colo. Jan. 31, 2025) (declining to grant preliminary relief because the court could not enjoin "private enforcement" of the challenged statute; any relief running against the sued government officials "would be closer to an advisory opinion than to actual preservation of the status quo"); *Free Speech Coal. v. Knudsen*, No. CV 24-67-M-DWM, 2025 WL 2240252, at * 4 (D. Mont. Aug. 6, 2025) ("Because [under *Whole Woman's Health*] the Court cannot provide the redress for the injuries alleged, Plaintiffs lack Article III standing.").

---

[3] Plaintiffs also fail to allege facts suggesting a credible threat of imminent future harm arising from the Attorney General's enforcement of the statute. *See Murthy v. Missouri*, 603 U.S. 43, 59 (2024) (plaintiffs must show "imminent future injury" that is traceable to the defendants' actions); *NetChoice, LLC v. Bonta*, 152 F.4th 1002, 1018-19 (9th Cir. 2025) (pre-enforcement review is improper if plaintiffs do not show a "credible threat that the violation will be prosecuted").

Page 4

Sincerely,

CARTER M. JANSEN
Deputy Attorney General

For      ROB BONTA
Attorney General
*Defendant*

Exhibit 3 First Hamp Modification – Triggering HAMP 2MP/NMS Rights and Benefits

5

PLAINTIFF'S EXHIBITS ATTACHED TO COMPLAINT

Investor Loan #328864323

**After Recording Return To:**

Provident Funding

1235 N. Dutton Ave

Suite E

Santa Rosa, CA 95401

This document was prepared by Jenna Tucci

_____[Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT
### (Step Two of Two-Step Documentation Process)

Borrower ("I"): KARL J KEENER

Lender ("Lender"): Provident Funding Associates, L.P.

Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 3/22/2006

Loan Number: 1120061530

Property Address ("Property"):

380 LADO DE LOMA DRIVE

VISTA, CA 92083

"MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.   **My Representations.** I certify, represent to Lender and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.   One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));

   E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

   H.   I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I". For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3157 3/09 (rev. 10/10) (page 1 of 4 pages)

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.  I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 12/1/2011 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 1/1/2012.

A.  The Maturity Date will be: 12/1/2051.
B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be $435,634.44 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.
C.  $186,600.00 of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $249,034.44. Interest at the rate of 2.000% will begin to accrue on the Interest Bearing Principal Balance as of 12/1/2011 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 1/1/2012. My payment schedule for the modified loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Estimated Monthly Escrow Payment Amount * | Total Monthly Payment * | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|----------------------------|-------------------------------------------|-------------------------|-------------------|----------------------------|
| 1-5 | 2.000% | 12/1/2011 | $754.14 | $356.71, may adjust perodically | $1,110.85, may adjust perodically | 1/1/2012 | 60 |
| 6 | 3.000% | 12/1/2016 | $876.14 | May adjust perodically | May adjust perodically | 1/1/2017 | 12 |
| 7-39 | 4.000% | 12/1/2017 | $1,004.91 | May adjust perodically | May adjust perodically | 1/1/2018 | 408 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

*The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.*

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.
E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

G.  If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

E.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's 'successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

MERS holds only legal title to the interests granted by the Borrower in the Mortgage, but if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interest, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

In Witness Whereof, the Lender and I have executed this Agreement.

(seal)
Borrower

Date  12/22/2011

Provident Funding Associates, L.P.
Lender

By: _____

(seal)
Borrower

_____
Date

_____
Date

_____
Mortgage Electronic Registration Systems, Inc. - Nominee for Lender

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3157 3/09 (rev. 10/10) (page 4 of 4 pages)

Exhibit 4 FTC Advisory Dual Capacity Conflict UCL

6

PLAINTIFF'S EXHIBITS ATTACHED TO COMPLAINT

UNITED STATES OF AMERICA
## FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Office of the Secretary

March 19, 2008

Barbara A. Sinsley
Manuel H. Newburger
Barron, Newburger, Sinsley & Wier, PLLC
2901 West Busch Boulevard
Tampa, Florida 33618

Dear Ms. Sinsley and Mr. Newburger:

This is in response to the request from the USFN, formerly known as the U.S. Foreclosure Network, for a Commission advisory opinion ("Request") regarding whether the Fair Debt Collection Practices Act ("FDCPA")[1] prohibits a debt collector in the foreclosure context from discussing settlement options in the collector's initial or subsequent communications with the consumer. The Request asserts that the receipt of information about settlement options could enable the consumer to save his or her home from foreclosure. As explained more fully below, the Commission concludes that debt collectors do not commit a *per se* violation of the FDCPA when they provide such information to consumers. Moreover, the Commission believes that it is in the public interest for consumers who may be subject to foreclosure to receive truthful, non-misleading information about settlement options, especially in light of the recent prevalence of mortgage borrowers who are delinquent or in foreclosure.[2]

---

[1] 15 U.S.C. §§ 1692 - 1692p.

[2] According to press reports, in 2007, there were an estimated 2.2 million foreclosure filings in the United States, a 75% increase from 2006. The number of foreclosure filings increased late in 2007 – in December there were 215,749 foreclosure filings, a 97% increase from the number of filings in December 2006. December was the fifth consecutive month in which foreclosure filings topped 200,000. Associated Press, *Home Foreclosure Rate Soars in 2007*, N.Y. TIMES, Jan. 29, 2008, *available at* www.nytimes.com/aponline/us/AP-Foreclosure-Rates.html. Mortgage delinquency is also escalating. The number of borrowers falling behind on first-lien mortgage payments for residences during 2007 was the highest it has been since 1986 – 2.64 million borrowers fell behind on payments. Michael M. Phillips, Serena Ng & John D. McKinnon, *Battle Lines Form Over Mortgage Plan*, WALL ST. J., Dec. 7, 2007, at A1.

USFN submitted the Request pursuant to Sections 1.1-1.4 of the Commission's Rules of Practice, 16 C.F.R. §§ 1.1-1.4.  The Request focuses on two sections of the FDCPA, Sections 807 and 809, 15 U.S.C. §§ 1692e, 1692g,[3] and presents three specific questions for consideration:

> (1) Does a debt collector violate the FDCPA when he, in conjunction with the sending of a "validation notice" pursuant to Section 809(a) of the FDCPA, notifies a consumer of settlement options that may be available to avoid foreclosure?
>
> (2)  Does a debt collector violate the FDCPA when he, subsequent to sending the validation notice pursuant to Section 809(a) of the FDCPA, notifies a consumer of settlement options that might be available to avoid foreclosure?
>
> (3) Does a debt collector commit a false, misleading or deceptive act or practice in violation of Section 807 of the FDCPA when he presents to a consumer settlement options that are available to the consumer to avoid foreclosure?

The Request states that there is no case law addressing these specific questions.  We address the questions *seriatim*.

USFN's first two questions specifically reference Section 809(a) of the FDCPA, 15 U.S.C. § 1692g(a).  Section 809(a) provides, in pertinent part, that a debt collector must, within the first five days after the initial communication with the debtor, provide a written notice containing specific information including the amount of the debt, the debtor's right to dispute the validity of the debt in writing within 30 days, and the collector's obligation to obtain verification of the debt in response to the consumer's dispute document.  Congress enacted Section 809 to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."[4]

Section 809(a) does not expressly prohibit debt collectors from adding language to the written validation notice with the mandatory disclosures.  The statute also does not expressly prohibit debt collectors from presenting information to consumers about settlement options in subsequent communications.  The Commission therefore concludes that there is no *per se* violation of Section 809(a) of the FDCPA if a debt collector includes information regarding foreclosure settlement options along with a validation notice or in subsequent communications after that notice is delivered.

---

[3] The Commission has considered only these sections in rendering this opinion and it should not be construed to pertain to any other section of the FDCPA, to any other law, or to any issue of legal ethics.

[4] S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698.

2

Nevertheless, collectors must take care that communicating information about settlement options does not undermine the consumer protections in Section 809(a). The touchstones of Section 809(a) are the consumer's rights to dispute his or her debt in writing within 30 days and to obtain verification of that debt from the collector. To protect these rights, in 2006 Congress amended Section 809(b) to expressly state that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt. . . ."[5] This statutory amendment ratified court decisions holding that debt collectors that provide consumers with information in addition to the mandatory disclosures violate Section 809(a) if the additional information effectively obscures the consumer's right to dispute his or her debt and obtain verification from the collector.[6] Specifically, these cases concluded that providing additional information is unlawful if it overshadows or contradicts required disclosures or creates confusion regarding the basic right to dispute the debt and obtain verification from the collector.[7] In making these determinations, courts considered the communication from the perspective of an unsophisticated consumer.[8]

In sum, with respect to USFN's first two questions presented in its Request, the Commission concludes that there is no *per se* violation of Section 809(a) if a debt collector in the foreclosure context discusses settlement options in the collector's initial or subsequent communications with the consumer. This conclusion, however, does not prevent a fact-based finding that a specific communication violates the Act if it overshadows or is inconsistent with the disclosures of the consumer's right to dispute the debt within 30 days.

USFN's third question asks whether a debt collector commits a false, misleading or deceptive act or practice in violation of Section 807 of the FDCPA when he presents to a consumer settlement options that are available to the consumer to avoid foreclosure. Section 807 of the FDCPA establishes a general prohibition against the use of any "false, deceptive or misleading representation or means in connection with the collection of any debt" and provides a list of 16 specific practices that are *per se* false, deceptive or misleading under the Act. In enacting Section 807, Congress noted that this general prohibition on deceptive collection practices would "enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed."[9]

---

[5] 15 U.S.C. § 1692g(b).

[6] *See, e.g., Swanson v. Oregon Credit Servs.,* 869 F.2d 1222 (9th Cir. 1988).

[7] *Id.; See, e.g.*, *Durkin v. Equifax Check Servs.,* 406 F.3d 410 (7th Cir. 2005); *Shapiro v. Riddle & Assocs.*, 351 F.3d 63 (2d Cir. 2003); *Renick v. Dun & Bradstreet Receivable Mgmt. Servs.,* 290 F.3d 1055 (9th Cir. 2002).

[8] *See, e.g., Sims v. G.C. Servs.*, 445 F.3d 959 (7th Cir. 2006) ("unsophisticated consumer"); *Smith v. Transworld Sys.*, 953 F.2d 1025 (6th Cir. 1992) ("least sophisticated consumer").

[9] S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1698.

3

As a general matter, the Commission concludes that a debt collector's communication with a consumer regarding his or her options to resolve mortgage debts and to potentially avoid foreclosure would not necessarily violate either the general or specific prohibitions of Section 807. However, we also stress that a particular communication with settlement option information could be deceptive in violation of Section 807 if it contains a false or misleading representation or omission of material fact. Determining whether a specific communication is false or misleading is a fact-based inquiry that considers all the facts and circumstances surrounding the particular communication at issue.[10]

After reviewing the language of the FDCPA, its legislative history, and relevant case law, as well as the information contained in the Request, the Commission concludes that a debt collector in the foreclosure context does not commit a *per se* violation of Sections 807 or 809 of the FDCPA when he or she addresses settlement options in the collector's initial or subsequent communications with the consumer.

By direction of the Commission.


Donald S. Clark
Secretary

---

[10] *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985) (noting that FDCPA expands pre-existing FTC deception authority); *see also FTC Policy Statement on Deception, appended to In re Cliffdale Associates, Inc.*, 103 F.T.C. 110, 174-84 (1984) (setting forth deception test).

Exhibit 5 – CC 2924.13 (AB 130) California Law

2025 California Code

Civil Code - CIV

DIVISION 3 - OBLIGATIONS

PART 4 - OBLIGATIONS ARISING FROM PARTICULAR TRANSACTIONS

TITLE 14 - LIEN

CHAPTER 2 - Mortgage

ARTICLE 1 - Mortgages in General

Section 2924.13.

Universal Citation:

CA Civ Code § 2924.13 (2025)

Learn more

Previous

Next

2924.13. (a) As used in this section:

(1) "Borrower" has the same meaning as defined in Section 2929.5.

(2) "Mortgage servicer" includes the current mortgage servicer and any prior mortgage servicers.

(3) "Subordinate mortgage" means a security instrument in residential real property, including a deed of trust and any security instrument that functions in the form of a mortgage, that was, at the time it was recorded, subordinate to another security interest encumbering the same residential real property.

(b) The following conduct constitutes an unlawful practice in connection with a subordinate mortgage:

(1) The mortgage servicer did not provide the borrower with any written communication regarding the loan secured by the mortgage for at least three years.

(2) The mortgage servicer failed to provide a transfer of loan servicing notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Real Estate Settlement Procedures Act, as amended (12 U.S.C. Sec. 2601 et seq.), and investor or guarantor requirements.

(3) The mortgage servicer failed to provide a transfer of loan ownership notice to the borrower when required to provide that notice by law, including, but not limited to, the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and investor or guarantor requirements.

(4) The mortgage servicer conducted or threatened to conduct a foreclosure sale after providing a form to the borrower indicating that the debt had been written off or discharged, including, but not limited to, an Internal Revenue Service Form 1099.

(5) The mortgage servicer conducted or threatened to conduct a foreclosure sale after the applicable statute of limitations expired.

(6) The mortgage servicer failed to provide a periodic account statement to the borrower when required to provide that statement by law, including, but not limited to, the federal Truth in Lending Act, as amended (15 U.S.C. 1601, et seq.), and investor or guarantor requirements.

(c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not conduct or threaten to conduct a nonjudicial foreclosure until the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent does both of the following:

(1) Simultaneously with the recording of a notice of default, records or causes to be recorded, in the office of the county recorder of the county that the encumbered property is located, a certification under penalty of perjury that either:

(A) The mortgage servicer did not engage in an unlawful practice as described in subdivision (b).

(B) The mortgage servicer lists all instances when it committed an unlawful practice as described in subdivision (b).

(2) Simultaneously with the service of a recorded notice of default, sends both of the following documents to the borrower by United States certified mail with return receipt requested to the last known mailing address of the borrower:

(A) A notice providing that if the borrower believes the mortgage servicer engaged in an unlawful practice described in subdivision (b) or misrepresented its compliance history, the borrower may petition the court for relief before the foreclosure sale.

(B) A copy of the certification recorded pursuant to paragraph (1).

(d) Upon a borrower's petition to the court for relief before the foreclosure sale, the court shall enjoin a proposed foreclosure sale pursuant to a power of sale in a subordinate mortgage until a final determination on the petition has been made.

(e) It shall be an affirmative defense in a judicial foreclosure proceeding if the court finds the mortgage servicer engaged in any of the unlawful practices specified in subdivision (b).

(f) The court may provide equitable remedies that the court deems appropriate, depending on the extent and severity of the mortgage servicer's violations. The equitable remedies may include, but are not limited to, striking all or a portion of the arrears claim, barring foreclosure, or permitting foreclosure subject to future compliance and corrected arrearage claim.

(g) A borrower may also petition the court to set a nonjudicial foreclosure sale aside when a certification required by subdivision (c) was never recorded or when a certification recorded pursuant to subdivision (c) indicates that the mortgage servicer engaged in an unlawful practice described in subdivision (b) or misrepresented its compliance history.

(h) Any failure to comply with the provisions of this section shall not affect the validity of a trustee's sale or a sale in favor of a bona fide purchaser.

(Added by Stats. 2025, Ch. 22, Sec. 2. (AB 130) Effective June 30, 2025.)

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
3/24/2026 3:26:44 PM

Clerk of the Superior Court
By V. Navarro          ,Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SAXON MORTGAGE SERVICES, INC.; SPECIALIZED LOAN SERVICING, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KARL JUSTIN KEENER

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* North County Regional Center<br><br>325 South Melrose Drive, Vista, CA 92081; (760) 201-8600 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>26CU016535N |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Richard Rydstrom, Esq. 4695 MacArthur Court 11th FloorNewport Beach, Ca 92660; 949.678.2218 (Tel)

| DATE:<br>*(Fecha)* March 25, 2026 | Clerk, by<br>*(Secretario)* _____ *V. Navarro* | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):*

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 147470 | FOR COURT USE ONLY |
|---|---|---|

NAME: Richard Rydstrom, Esq.

FIRM NAME: Rydstrom Law Office

STREET ADDRESS: 4695 MacArthur Ct, 11th Flr.

CITY: Newport Beach    STATE: CA    ZIP CODE: 92660

TELEPHONE NO.: 949-678-2218    FAX NO.:

EMAIL ADDRESS: RichRydstrom@gmail.com

ATTORNEY FOR (name): KARL JUSTIN KEENER

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
3/24/2026 3:26:44 PM

Clerk of the Superior Court
By V. Navarro        ,Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS: 325 South Melrose Drive

MAILING ADDRESS: 325 South Melrose Drive

CITY AND ZIP CODE: Vista, CA 92081; 760-201-8600

BRANCH NAME: North County Regional Center

CASE NAME:
KEENER vs. SAXON, et al

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited  ☐ Limited | ☐ Counter  ☐ Joinder | 26CU016535N |
| (Amount demanded exceeds $35,000) | (Amount demanded is $35,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Asbestos**
- ☐ Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/Unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☑ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Employment Development Department (EDD)**
- ☐ EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Comprehensive groundwater adjudication (47)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10

**Civil Case Cover Sheet**

CM-010, Page 1 of 3



CM-010

2. Is this case complex under rule 3.400 of the California Rules of Court?  ☐ Yes  ☒ No

If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties

b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. ☐ Substantial amount of documentary evidence

d. ☐ Large number of witnesses

e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply):

a. ☒ monetary

b. ☒ nonmonetary; declaratory or injunctive relief

c. ☒ punitive

4. Number of causes of action (specify):

5. Is this case a class action suit?  ☐ Yes  ☒ No

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 3/24/2026

Richard Rydstrom, Esq.
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

---

Rev. January 1, 2026          **Civil Case Cover Sheet**          CM-010, Page 2 of 3



CM-010

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/ Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/ environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication (47)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

5/24/2026 9:08:03 PM

Clerk of the Superior Court
By T. Automation          ,Deputy Clerk

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State, Bar number, and address)*: | |
|---|---|
| **Rydstrom Law**<br>**4695 MacArthur Ct Fl 11th**<br>**Newport Beach, CA 92660**<br>TELEPHONE NO.: **949-678-2218**     FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: **Karl Justin Keener** | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:    **325 South Melrose Dr**

MAILING ADDRESS:    **325 South Melrose Dr**

CITY AND ZIP CODE:    **Vista 92081**

BRANCH NAME:    **North County Regional Center**

| PLAINTIFF/PETITIONER: **Karl Justin Keener** | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: **Saxon Mortgage Services, Inc.; Specialized Loan Servicing, LLC** | **26CU016535N** |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>**Keener_SOP_1_2** |

**IMAGED FILE**

**BY FAX**

1.   At the time of service I was at least 18 years of age and not a party to this action.

2.   I served copies of *(specify documents)*:
     **Complaint; Civil Case Cover Sheet; Summons**

3.   a.   Party served *(specify name of party as shown on documents served)*:
          **SAXON MORTGAGE SERVICES, INC.**

     b.   **[X]**   Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b whom substituted service was made) *(specify name and relationship to the party named in item 3a )*:
          **Corporation Service Company in California as CSC-Lawyers Incorporating Service, REGISTERED AGENT, REGISTERED AGENT of SAXON MORTGAGE SERVICES, INC.**
          **I delivered the documents to Corporation Service Company in California as CSC-Lawyers Incorporating Service, REGISTERED AGENT with identity confirmed by subject showing identification. The individual accepted service with direct delivery. The individual appeared to be a blonde-haired white male contact 18-25 years of age, 5'6" -5'8" tall and weighing 120-140 lbs.**

4.   Address where the party was served:
     **2710 Gateway Oaks Dr Ste 150N, Sacramento, CA 95833**

5.   I served the party *(check proper box)*

     a.   **[X]**   **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: **05/21/2026** at *(time)*: **10:47 AM**
          **Corporation Service Company in California as CSC-Lawyers Incorporating Service, REGISTERED AGENT**
          **I delivered the documents to Corporation Service Company in California as CSC-Lawyers Incorporating Service, REGISTERED AGENT with identity confirmed by subject showing identification. The individual accepted service with direct delivery. The individual appeared to be a blonde-haired white male contact 18-25 years of age, 5'6" -5'8" tall and weighing 120-140 lbs.**

     b.   **[ ]**   **by substituted service.** On *(date)*:            at *(time)*:            I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

          (1)   **[ ]**   **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

          (2)   **[ ]**   **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

Page 1 of 3

Form Adopted for Mandatory Use
Judicial Council of California POS-
010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure. § 417.10

Tracking #: **0224485720**

REF: **Keener_SOP_1_2**

| PLAINTIFF/PETITIONER: Karl Justin Keener | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Saxon Mortgage Services, Inc.; Specialized Loan Servicing, LLC | 26CU016535N |

(3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

(4) ☐ I thereafter caused to be mailed (by first class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc § 415.20). Documents were mailed on *(date):*          from *(city):*                    **or** ☐ a declaration of mailing is attached.

(5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

c. ☐ **by mail and acknowledgement of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*                    (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of *(specify):*

c. ☐ as occupant.

d. ☒ On behalf of *(specify)* **SAXON MORTGAGE SERVICES, INC. c/o Corporation Service Company in California as**
under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

a. Name:  **Joshua Newman-Defazio**
b. Address:  **3532 del sol wat, Sacramento, CA 95834**
c. Telephone number:  **916-676-6499**
d. The fee for service was: **$ 76.00**
e. I am:

(1) ☐ not a registered California process server.

(2) ☐ exempt from registration under Business and Professions Code section 22350(b).

(3) ☒ registered California process server:
(i) ☐ owner   ☐ employee   ☒ independent contractor.   For:   **ABC Legal Services, LLC**

**BY FAX**

**Page 2 of 3**

POS-010 [Rev. January 1, 2007]


REF: **Keener_SOP_1_2**

**PROOF OF SERVICE OF SUMMONS**

Tracking #: **0224485720**



(ii) [X] Registration No.: **2022-036**          Registration #: **6779**

(iii) [X] County:          **Sacramento**          County:     **Los Angeles**

8. [X]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

9. [ ]  **I am a California sheriff or marshal and I certify** that the foregoing is true and correct.


Date:  05/21/2026



_____
**Joshua Newman-Defazio**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
(SIGNATURE)

**Page 3 of 3**

REF: **Keener_SOP_1_2**

**PROOF OF SERVICE OF SUMMONS**          Tracking #: **0224485720**